T.C. Memo. 2008-223

UNITED STATES TAX COURT

BHARAT I. PATEL AND VIBHA B. PATEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15491-06.               Filed October 1, 2008.

<u>Jon J. Jensen</u>, for petitioners.

<u>Melissa J. Hedtke</u>, <u>Trent Usitalo</u>, and <u>Blaine Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Bharat I. Patel (Mr. Patel) and Vibha B. Patel (Mrs. Patel) petitioned the Court for redetermination of the following deficiencies in Federal income tax and penalties:

|       |            | Penalties     |             |
| Year  | Deficiency | Sec. 6663     | Sec. 6662(a) |
|-------|------------|---------------|-------------|
| 1995  | $51,575    | $26,149       | $3,342      |
| 1996  | 106,621    | 66,389        | 3,620       |
| 1997  | 161,204    | 104,574       | 4,354       |

The issues for decision after concessions are: (1) Whether the statute of limitations under section 6501(a) bars the issuance of the notice of deficiency; (2) whether petitioners failed to report gross receipts of $71,414 in 1995 and $173,292 in 1996; (3) whether petitioners failed to report on their 1997 Schedule E, Supplemental Income and Loss, income of $55,408; (4) whether petitioners overstated their expenses in 1995, 1996, and 1997; (5) whether petitioners are entitled to deductions for self-employed health insurance greater than $343, $543, and $743 for 1995, 1996, and 1997, respectively; (6) whether petitioners are liable for fraud penalties under section 6663; and (7) whether petitioners are liable for accuracy-related penalties under section 6662(a).[1]  For all purposes hereafter, the years at issue shall refer to 1995, 1996, and 1997.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulation of facts, together with the attached exhibits, are incorporated

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

herein by this reference.  At the time petitioners filed their petition, they resided in North Dakota.

Petitioners are husband and wife.  Mr. Patel moved to the United States from India in 1980 at the age of 20.  Mrs. Patel moved from India to join him in 1985.  Petitioners have owned and managed hotels or motels in the United States since 1985. Petitioners filed joint Federal income tax returns for the years at issue.

In 1998 a civil audit of petitioners' 1996 return was initiated and later expanded to include their 1995 and 1997 returns.  In 1999 petitioners' returns for the years at issue were referred for criminal investigation.  On July 6, 2004, Mr. Patel was convicted of income tax fraud under section 7206(1) for 1997.

On May 26, 2006, respondent sent petitioners a notice of deficiency for the years at issue.  Petitioners filed a timely petition with this Court, and a trial was held on September 28, 2007, in St. Paul, Minnesota.  On March 6, 2008, as a result of evidence presented at trial, the Court granted respondent's motion for leave to amend his answer to increase the 1996 deficiency by $34,029 for a total deficiency of $140,650, and to increase the fraud penalty under section 6663 by $25,522 for a total fraud penalty of $91,911.

I.   Petitioners' Motel Business

     A.   Motel Business

     Petitioners owned three motels during the years at issue:
(1) Budget Inn in Dickinson, North Dakota (Budget Inn); (2) Super
8 Motel in Glendive, Montana (S8 Glendive); and (3) Super 8 Motel
in Dickinson, North Dakota (S8 Dickinson).  S8 Glendive and S8
Dickinson (S8 Motels) were operated as sole proprietorships, and
petitioners reported income and expenses related to the S8 Motels
on their Schedules C, Profit or Loss From Business.  Budget Inn
was operated as an S corporation.

     Petitioners also held a partnership interest in BISK & BK
Partnership, L.L.P., and BI & SK Partnership, L.L.P. (the
partnerships) during the years at issue.  BISK & BK Partnership,
L.L.P., owned and operated Super 8 Motel in Willmar, Minnesota,
while BI & SK Partnership, L.L.P., owned and operated Super 8
Motel in Winona, Minnesota (the partnership motels).  The
partnerships were owned by petitioners and Mr. Patel's relatives,
Dr. B.K. Patel and Dr. S.K. Patel.

     B.   Record Keeping

     Petitioners performed the bookkeeping for the S8 Motels and
Budget Inn themselves during the years at issue.  Petitioners
were also in charge of accounting, record keeping, and
management, including the hiring and firing of motel personnel,
at the S8 Motels and Budget Inn.  Mr. Patel instructed the

manager of S8 Glendive on how to run a motel.  The manager of S8 Glendive, who had previous experience managing other hotels, believed Mr. Patel was a competent and knowledgeable manager.

Petitioners received the business bank account statements for the S8 Motels, Budget Inn, and the partnership motels during the years at issue.  Bank statements, checks, and deposit tickets for S8 Glendive were mailed directly to petitioners in Dickinson, North Dakota.

Each day during the years at issue petitioners received the daily reports for the S8 Motels, Budget Inn, and the partnership motels.  The daily reports for each of the S8 Motels showed which rooms were rented out, the amount received for each room, the type of payment received, the amount of tax charged, daily video income, and miscellaneous charges such as telephone and fax fees. Petitioners reconciled the daily reports for each of their five motels to the corresponding business bank statements during the years at issue.  Mr. Patel discussed the daily reports with petitioners' night auditor on several occasions.  Mr. Patel explained to the night auditor how to calculate the room tax.

Petitioners paid the bills for each of the S8 Motels, Budget Inn, and each of the partnership motels during the years at issue.  Petitioners maintained a separate check register or check listing for each of the S8 Motels, Budget Inn, and each of the partnership motels during the years at issue.

C.   <u>Video Rental Business</u>

Petitioners operated a video rental business out of S8 Glendive called "Movies to Go".  During the years at issue petitioners kept roughly 1,000 videos to rent or sell to hotel guests and the general public.  Customers desiring to rent videos from Movies to Go would fill out a rental agreement, set up an account, and pay a rental fee.  Video rental fees were not included in the S8 Glendive room rental bill, and guests paid for video rentals separately.

Video rental and sale information was entered into a separate computer at S8 Glendive that was used only for video rentals.  Petitioners used this computer to compile daily and monthly video rental summaries showing daily and monthly video sales and rentals at S8 Glendive.  The S8 Glendive video rental agreements were cross-checked each day with the computer-generated daily video rental summaries.

The night auditor for S8 Glendive added up the income from video rentals and video sales and recorded that amount on the bottom of each S8 Glendive daily video rental summary for the years at issue.  At the end of each month during the years at issue, the daily video rental summaries were attached to the monthly video rental summaries and given to petitioners.  A copy of the S8 Glendive daily report was also faxed to petitioners

each day, and the original daily reports were mailed to petitioners each month.

D.  <u>Vending Income</u>

Petitioners received income from vending machines at S8 Glendive during the years at issue.  Income from vending machines was not recorded on the S8 Glendive Daily Reports during the years at issue.  However, the daily reports for S8 Glendive show income from the sale of coffee, which was not sold from a vending machine.

E.  <u>Bank Accounts and Bank Records</u>

Petitioners owned and maintained a personal checking account as well as a personal savings account during the years at issue. Petitioners paid some of their personal expenses from their personal checking account.

Petitioners had a separate business bank account for each of the five motels that they owned or in which they had an interest. Petitioners maintained a business checking account at the American State Bank & Trust in Dickinson, North Dakota, in the name Super 8 Motel c/o Budget Inn of Dickinson (S8 Dickinson account) during the years at issue.  Petitioners maintained a business checking account at the FirstWest Bank, now Stockman Bank, in the name Super 8 Motel of Glendive (S8 Glendive account), during the years at issue.  Petitioners maintained a

checking account at American State Bank & Trust in the name Budget Inn of Dickinson, Inc. (Budget Inn Account), in 1997.

II. Petitioners' Returns and Recalculation

A. Personal Returns

Larry Robinson, C.P.A. (Mr. Robinson), prepared petitioners' individual income tax returns and the Forms 1120S, U.S. Income Tax Return for an S Corporation, for Budget Inn for the years at issue. When petitioners hired Mr. Robinson, they told him that all of their business income was deposited into their business accounts and that all business expenses were paid by check.

Mr. Patel prepared yearend income expense summary sheets (summary sheets) for Budget Inn and the S8 Motels. Mr. Patel prepared the summary sheets from bank statements and check registers. However, he would also insert personal expenses, such as the purchase of cars or gold bullion, on the summary sheets under business expenses related to the operation of the S8 Motels.

Petitioners provided Mr. Robinson with summary sheets for the S8 Motels and Budget Inn to use in the preparation of petitioners' personal income tax returns for the years at issue. Mr. Patel told Mr. Robinson that the summary sheets for the S8 Motels and Budget Inn for the years at issue were a recap of his bank statements and check listings. He did not inform Mr.

Robinson that he had inserted personal expenses on the summary sheets.

Mr. Robinson transferred all of the totals set forth on the summary sheets for the S8 Motels and Budget Inn for the years at issue to petitioners' returns, either as single figures or as combinations of figures. With the exception of payroll information and a record of interest paid on bank notes, the only information provided to Mr. Robinson regarding Schedule C income and expenses during the years at issue was listed on the summary sheets. Petitioners did not provide Mr. Robinson with the daily reports for their S8 Motels or for Budget Inn.

Mr. Robinson did not recalculate the amounts listed on the 1997 summary sheet for the S8 Motels when he prepared petitioners' 1997 Form 1040, U.S. Individual Income Tax Return.

Mr. Robinson did not prepare balance sheets, transaction details, or profit and loss statements for the S8 Motels or for Budget Inn until he recalculated petitioners' tax liability in 2000.

For each of the years at issue petitioners reported a loss on their S8 Dickinson Schedule C. For 1995 and 1997 petitioners reported losses on their S8 Glendive Schedules C.

B.   The Partnership Returns

Petitioners were responsible for having the tax returns for the partnerships prepared during the years at issue. These tax

returns were prepared by Mr. Robinson.  For preparation of these tax returns, petitioners provided Mr. Robinson with bank statements and check registers listing disbursements for each of the partnership motels.  Mr. Robinson reconciled the bank statements and prepared yearend summaries, yearend balance sheets, and yearend profit and loss statements for the partnerships during the years at issue.  Petitioners did not provide Mr. Robinson with summary sheets for the partnership motels to use in the preparation of the returns.

Petitioners reported a profit from each of their partnership motels on their Schedule E for each of the years at issue.

C.   Petitioners' Recalculation of Their Tax Liabilities

In 1999, in response to the criminal investigation, petitioners requested that Mr. Robinson recalculate their income tax liabilities for the years at issue.  For each of the years at issue profit or loss was reported by petitioners on their Schedules C and recalculated by Mr. Robinson as follows:

| Year | S8 Glendive | S8 Dickinson |
|------|-------------|--------------|
| 1995 | | |
| Reported | ($18,366) | ($1,174) |
| Recalculated | 94,005 | 6,043 |
| 1996 | | |
| Reported | $15,111 | ($46,198) |
| Recalculated | 158,743 | 73,008 |
| 1997 | | |
| Reported | ($8,254) | ($59,979) |
| Recalculated | 137,167 | 14,496 |

Mr. Robinson determined that petitioners failed to report 75 percent, 90 percent, and 96 percent of their taxable income in 1995, 1996, and 1997, respectively. Mr. Robinson recalculated petitioners' income tax liabilities by obtaining the bank statements, the check registers, and the reconciliation (check listings) for each S8 Motel and entered the information into Quick Books software. Mr. Robinson then reviewed the recap with petitioners and removed any items from the check listings that were questionable. Mr. Robinson also removed items from business expenses that were confirmed to be personal. Mr. Robinson estimated all credit card processing fees in his recalculation and did not require petitioners to substantiate any of their expenses.

After Mr. Robinson recalculated their income tax liabilities, petitioners sent payments to the Internal Revenue

Service (IRS) for 1995, 1996, and 1997 in the amounts of $62,400, $120,800, and $91,800, respectively.

III. <u>Unreported Income</u>

Petitioners understated their adjusted gross income in 1995, 1996, and 1997 by 210 percent, 532 percent, and 1,417 percent, respectively.  For the years at issue Schedule C gross receipts for the S8 Motels reported on petitioners' returns, the corrected amounts of gross receipts as determined by petitioners, the corrected amounts of gross receipts as determined by respondent, and respondent's adjustments to originally reported gross receipts are set out below:

<u>Super 8 of Glendive, Schedule C Gross Receipts</u>

| Year | Per Return | Corrected Per Petitioners | Corrected Per Respondent | Respondent's Adjustment |
|------|-----------|---------------------------|--------------------------|-------------------------|
| 1995 | $466,043 | $524,536 | $531,330 | $65,288 |
| 1996 | 471,846 | 563,627 | 645,138 | 173,292 |
| 1997 | 445,187 | 590,608 | 590,608 | 145,421 |

<u>Super 8 of Dickinson, Schedule C Gross Receipts</u>

| Year | Per Return | Corrected Per Petitioners | Corrected Per Respondent | Respondent's Adjustment |
|------|-----------|---------------------------|--------------------------|-------------------------|
| 1995 | $67,818 | $59,837 | $73,944 | $6,126 |
| 1996 | 458,252 | 515,956 | 515,956 | 57,704 |
| 1997 | 357,676 | 432,151 | 432,151 | 74,475 |

The following gross receipts were reported on petitioners' Schedules C, recorded on the daily reports for petitioners' S8 Motels, and recalculated by petitioners for each of the years at issue.

| 1995 | S8 Glendive | S8 Dickinson |
|---|---|---|
| Total gross receipts per return | $466,043 | $67,818 |
| Gross receipts per daily reports | | |
|   Room Rental | 443,831 | 67,283 |
|   Tax | 17,844 | 5,803 |
|   Telephone | ---- | 746 |
|   Miscellaneous | 6,649 | 254 |
|   Videos | 55,589 | -0- |
| Total gross receipts per daily reports | 523,913 | 74,086 |
| Total gross receipts per petitioners' recalculation | 524,536 | 59,837 |

| 1996 | S8 Glendive | S8 Dickinson |
|---|---|---|
| Total gross receipts per return | $471,846 | $458,252 |
| Gross receipts per daily reports | | |
|   Room Rental | 471,846 | 457,286 |
|   Tax | 18,534 | 40,778 |
|   Telephone | ---- | 4,683 |
|   Miscellaneous | 10,782 | 3,167 |
|   Videos | 50,636 | -0- |
| Total gross receipts per daily reports | 551,798 | 505,913 |
| Total gross receipts per petitioners' recalculation | 563,627 | 515,956 |

| 1997 | S8 Glendive | S8 Dickinson |
|---|---|---|
| Total gross receipts per return | $445,187 | $357,676 |
| Gross receipts per daily reports | | |
|   Room Rental | 464,344 | 377,970 |
|   Tax | 18,511 | 33,833 |
|   Telephone | ---- | 888 |
|   Miscellaneous | 6,386 | 3,840 |
|   Videos | 39,455 | -0- |
| Total gross receipts per daily reports | 528,696 | 416,531 |
| Total gross receipts per petitioners' recalculation | 590,608 | 432,151 |

A.    1995 Schedule C Income From S8 Glendive

Respondent calculated petitioners' unreported gross receipts from S8 Glendive in 1995 by taking the total gross receipts shown on the S8 Glendive daily reports, adding unreported income from vending machines in the motel, and adding a small amount of room tax.  Respondent estimated 1995 income from vending machines at S8 Glendive by using a 100-percent markup on vending items for total vending income of $9,072 in 1995.  Respondent then subtracted $1,662 in vending income already reported and estimated that petitioners failed to report vending income in 1995 of $7,416.

B.    1996 Schedule C Income From S8 Glendive

Petitioners made total deposits into their S8 Dickinson account in 1996 of $558,288, consisting of $588 of nontaxable deposits and $557,700 of taxable deposits.

During 1996 Western Geco, f.k.a. Geco-Prakla or STC Geco-Prakla, paid petitioners $160,351 by check for crew accommodations at S8 Glendive.  Western Geco was an oil and gas exploration firm with a crew of 40-45 based at S8 Glendive during 1996.  Petitioners deposited $72,913 in payments from Western Geco into their S8 Glendive Account in 1996.  However, petitioners failed to deposit $87,438 in income from Western Geco into their S8 Glendive Account in 1996.

C.   <u>1997 Schedule E Income From Budget Inn</u>

Petitioners reported gross receipts on their 1997 Budget Inn Schedule E of $164,389.  Petitioners made total deposits into their Budget Inn Account in 1997 of $200,882, consisting of $7,000 of nontaxable deposits and taxable deposits of $193,882. Petitioners failed to report gross receipts of $29,493 from Budget Inn on their 1997 Schedule E.  Petitioners also failed to substantiate $25,915 in expenses claimed on their 1997 Form 1120S for Budget Inn.

IV.   <u>Overstated Schedule C Expenses</u>

Petitioners concede that they overstated their Schedule C expenses for each of the years at issue in the following amounts:

| Schedule C | Overstated Schedule C Expenses | | |
|---|---|---|---|
| | 1995 | 1996 | 1997 |
| S8 Glendive | $53,878 | $57,190 | $85,939 |
| S8 Dickinson | 15,198 | 61,502 | 37,968 |
| Total | 69,076 | 118,692 | 123,907 |

Respondent determined that petitioners overstated their Schedule C expenses for each of the years at issue in the following amounts:

| Schedule C | Overstated Schedule C Expenses | | |
|---|---|---|---|
| | 1995 | 1996 | 1997 |
| S8 Glendive | $59,582 | $73,556 | $95,727 |
| S8 Dickinson | 16,775 | 75,689 | 42,153 |
| Total | 76,357 | 149,245 | 137,880 |

For each of the years at issue petitioners concede they improperly deducted personal expenses as Schedule C business

expenses.  Neither petitioners nor their partners deducted personal expenses as business expenses on their partnership returns for the years at issue.

A.   <u>1995 Expenses</u>

Petitioners improperly deducted the following personal expenses as business expenses under the following categories on their 1995 S8 Motels Schedules C:

| <u>Expense</u> | <u>Amount</u> | <u>Deducted As</u> | <u>Schedule C</u> |
|---|---|---|---|
| Personal home mortgage payments | $6,134 | [1] | S8 Glendive |
| Personal medical expenses | 3,014 | [1] | S8 Glendive |
| Medical insurance premiums | 691 | [1] | S8 Glendive |
| Family trip to India | 7,075 | [1] | S8 Glendive |
| Car lease payments | 7,714 | Rent | S8 Glendive |
| Personal health insurance premiums | 452 | Insurance | S8 Dickinson |
| Family trip to India | 762 | [1] | S8 Dickinson |
| Auto & personal homeowner's insurance premiums | 1,120 | [1] | S8 Dickinson |

[1]The Schedule C category under which this personal expense was deducted is undetermined.

On June 30, 1995, petitioners took out a $134,400 home mortgage loan on their personal residence located at 114 15th Ave. West, Dickinson, North Dakota 58601, with Liberty Bank and Trust.  In 1995 and 1996 automatic monthly debits of $1,227 were taken out of the S8 Glendive account and applied to petitioners' home mortgage loan.  On October 4, 1996, petitioners paid their

home mortgage loan in full by making a payment of $127,957 out of their S8 Glendive account. Petitioners did not deduct the $127,957 home mortgage payment as a business expense on their 1996 S8 Glendive Schedule C. However, petitioners deducted all of the other personal home mortgage payments that they made during 1995 and 1996 as business expenses on their S8 Glendive Schedules C.

Petitioners' personal health insurance was provided by Golden Rule Insurance Co. (Golden Rule). On March 7, 1995, Mr. Patel signed a Personal Health Insurance Certification with Golden Rule stating that he understood that the Golden Rule coverage for which he was applying was personal health insurance and could not be used by any employer to provide for any employee. Mr. Patel also certified that he would not treat the policy as part of any employer-provided health insurance plan for any purpose, including tax purposes. Nevertheless, Mr. Patel paid the Golden Rule premiums with business checks out of the S8 Dickinson account. Petitioners then deducted the premiums as a business expense in each of the years at issue.

B.  <u>1996 Expenses</u>

Petitioners improperly deducted the following personal expenses as business expenses under the following categories on their 1996 S8 Motels Schedules C:

| Expense | Amount | Deducted As | Schedule C |
|---------|--------|-------------|------------|
| Personal home mortgage payments | $12,269 | Rent | S8 Glendive |
| Home mortgage interest payments | 7,926 | Rent | S8 Glendive |
| Family trip to India | 5,720 | Travel | S8 Glendive |
| Gold bullion purchase | 2,372 | Utilities | S8 Glendive |
| Personal health insurance premiums | 1,356 | Insurance | S8 Dickinson |
| Personal auto insurance & home owner's insurance on personal residence | 2,225 | Insurance | S8 Dickinson |
| Life insurance | 19,429 | Insurance | S8 Dickinson |
| Family trip to India | 5,775 | Travel | S8 Dickinson |
| Car lease payments | 8,760 | Car expense | S8 Dickinson |

Petitioners deducted the home mortgage interest payment on their personal 1996 return Schedule A, Itemized Deductions, as well as on their 1996 S8 Glendive Schedule C under rent.

Petitioners subclassified the gold bullion purchase as a garbage expense on the 1996 S8 Glendive summary sheet they provided to Mr. Robinson.

Petitioners also overstated their insurance expenses by $22,244 and their Super 8 Motels royalty payments by $4,718 on their S8 Dickinson summary sheet.

C.   1997 Expenses

Petitioners overstated the following expense categories on the summary sheets that they prepared and provided to Mr.

Robinson for use in the preparation of their 1997 S8 Glendive

Schedule C:

| Expense | Amount per Addition of Figures on Summary Sheet | Total Set Forth on Summary Sheet & Per Return | Overstated Amount |
|---|---|---|---|
| Credit card | $530 | $11,530 | $11,000 |
| Office supplies | 2,181 | 7,181 | 5,000 |
| Electric/water | 18,149 | 33,149 | 15,000 |
| Breakfast supplies | 3,427 | 5,427 | 2,000 |
| Super 8 Motel royalties | 27,707 | 32,707 | 5,000 |

Petitioners improperly deducted personal expenses as

business expenses under the following categories on their 1997 S8

Motels Schedules C:

| Expense | Amount | Deducted As | Schedule C |
|---|---|---|---|
| Diamond jewelry | $13,500 | Travel expense | S8 Glendive |
| Life insurance | 18,887 | Insurance | S8 Glendive |
| Personal medical expenses | 1,155 | Guest supplies | S8 Glendive |
| Jewelry | 2,587 | Guest supplies | S8 Glendive |
| Payment to relatives | 3,000 | Laundry supplies | S8 Dickinson |
| Orthodontic expenses | 2,755 | Insurance | S8 Dickinson |
| Personal health, auto & homeowner's insurance | 3,766 | Insurance | S8 Dickinson |
| Jewelry | 1,540 | Office Supplies | S8 Dickinson |

V.   Matters Pertaining to Fraud

   A.   Vehicles

   On April 24, 1996, petitioners purchased a 1996 Dodge Grand

Caravan for $26,525.  Mr. Patel received a trade-in allowance of

$12,400 for a 1990 Mazda and paid the remainder of the purchase

price in full with a cashier's check from his personal savings account at Norwest Bank in the amount of $14,943. On June 8, 1996, petitioners purchased a 1996 Mercedes Benz S420 for $68,250. Mr. Patel made a $2,000 downpayment on the Mercedes through his Discover credit card and received a trade-in allowance of $15,500 on a 1993 Mazda. Petitioners paid the remainder of the purchase price in full with a check in the amount of $54,220. Neither the check register for S8 Glendive nor the check register for S8 Dickinson reflects a payment for $14,943 in April 1996 or a payment for $54,220 in June 1996. On October 31, 1996, petitioners also purchased a 1977 Ford Pickup Truck for $500.

   B.   False Statements

On September 30, 1998, Mr. Patel and Mr. Robinson met with Revenue Agent Karen Dassinger (Ms. Dassinger). At that meeting, Mr. Patel falsely told Ms. Dassinger that he had never visited the local IRS office in Dickinson, North Dakota. Mr. Patel was familiar with the IRS agents who worked in the IRS office in Dickinson, North Dakota, because he had been to the office several times to get answers to tax questions. Mr. Patel later admitted in private to Ms. Dassinger that he had been to the local IRS office but had not wanted Mr. Robinson to know. Mr. Patel also falsely told Ms. Dassinger in private that he supplied videos for guests of S8 Glendive because there was no cable at S8

Glendive. Cable was available to guests at S8 Glendive during the years at issue, and petitioners deducted cable expenses on their S8 Glendive Schedule C in 1995, 1996, and 1997.

In a meeting with Ms. Dassinger on November 5, 1998, Mr. Patel stated that the only vehicles he owned in 1996 were a Dodge Caravan and a Mazda.

During a meeting with Special Agent Andrew Smith on December 9, 1999, Mr. Patel stated that he did not use cash or cashier's checks to purchase goods for personal use.

C.   Criminal Case

Mr. Patel admitted that for the taxable year 1997 he willfully made and submitted a false tax return, made under penalty of perjury and filed with the IRS, knowing it to be false, in violation of section 7206(1). In his plea agreement Mr. Patel admitted that he overstated business expenses on this 1997 Form 1040 by classifying personal expenditures such as diamond jewelry, gold bullion, medical expenses, orthodontic work, and house payments as business expenses.

OPINION

I.   Burden of Proof

Respondent's revenue agent first met with petitioners in 1998 after the start of his examination of their 1995, 1996, and 1997 returns. Because respondent's examination of petitioners' returns began before July 22, 1998, section 7491 does not apply.

See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726. Respondent's determinations in the notice of deficiency are presumed correct, and petitioners bear the burden of proving that respondent's determinations are incorrect. See Rule 142(a)(1). Respondent has the burden of proof by clear and convincing evidence with respect to his determination of fraud. See Rule 142(b). Respondent also has the burden of proof with respect to the increased deficiency for the year 1996. See Rule 142(a)(1).

II. Period of Limitations on Assessment

Petitioners contend that the 3-year period of limitations on assessment in section 6501(a) expired before respondent issued the notice of deficiency and respondent's assessment is barred. Respondent argues that the period of limitations in section 6501(a) does not apply because petitioners filed false or fraudulent returns with the intent to evade taxes for the years at issue. Sec. 6501(c)(1). Accordingly, our determination of whether the period of limitations expired before the notice of deficiency was issued depends on whether petitioners committed fraud in the filing of their 1995, 1996, and 1997 returns. The determination of fraud for purposes of section 6501(c)(1) is the same as the determination of fraud for purposes of the penalty under section 6663. Neely v. Commissioner, 116 T.C. 79, 85

(2001); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 548 (2000).

Mr. Patel's guilty plea under section 7206(1) for intentionally filing a false return does not in itself prove that section 6501(c) applies; respondent must show that petitioners intended to evade tax for each of the years at issue. See Wright v. Commissioner, 84 T.C. 636, 643 (1985). For Federal tax purposes, fraud entails intentional wrongdoing with the purpose of evading a tax believed to be owing. See Neely v. Commissioner, supra at 86. In order to show fraud, respondent must prove: (1) An underpayment exists; and (2) petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

A.   Underpayment of Tax

Respondent must first show by clear and convincing evidence that petitioners made an underpayment of tax in each of the years at issue. For 1995, 1996, and 1997, petitioners have conceded that they made underpayments of tax of at least $62,400, $120,800, and $91,800, respectively. Therefore, respondent has satisfied his burden of proof for this issue.

B.   Fraudulent Intent

Because direct evidence of fraud is rarely available, fraud may be proved by circumstantial evidence and reasonable

inferences from the facts.  Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).  Courts have developed a nonexclusive list of factors, or "badges of fraud", that demonstrate fraudulent intent.  Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). These badges of fraud include:  (1) Understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash.  Id.; see also Spies v. United States, 317 U.S. 492, 499 (1943); Morse v. Commissioner, 419 F.3d 829, 832 (8th Cir. 2005), affg. T.C. Memo. 2003-332; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence.  Niedringhaus v. Commissioner, supra at 211. Respondent must prove fraud for each year at issue.  See id. at 210; Ferguson v. Commissioner, T.C. Memo. 2004-90.

Petitioners' behavior with respect to their income shows 8 of the 11 badges of fraud, as follows.

(1) Petitioners understated their adjusted gross income by 210 percent, 532 percent, and 1,417 percent in 1995, 1996, and 1997, respectively.

(2) Petitioners maintained inadequate records by failing to substantiate a large portion of their Schedule C business expenses.

(3) Petitioners concealed the true nature of their income and expenses from their return preparer by providing inaccurate summary sheets for their Super 8 Motels and not providing source documentation. Petitioners completely omitted their income from video sales and rentals.

(4) Petitioners engaged in a pattern of conduct that indicates an intent to mislead. Critically, petitioners disguised clearly personal items such as medical insurance premiums, the purchase of gold bullion, and gifts to relatives as business expenses under categories such as "utilities" and "laundry supplies" on their summary sheets.

(5) Petitioners' explanation for their behavior is implausible and inconsistent. Mr. Patel testified that he believed all personal expenses were deductible. However, petitioners did not deduct major personal items, such as Mr. Patel's purchases of a Mercedes and a Dodge Grand Caravan in 1996. Petitioners also did not deduct personal items as business expenses on their partnership returns.

(6) Petitioners have failed to fully cooperate with tax authorities.  Mr. Patel twice lied to respondent's revenue agent regarding his income and assets.

(7) Petitioners' testimony regarding their level of sophistication and ability to comply with the tax laws is not credible.  Petitioners claim that they did not have any significant sophistication with regard to tax matters and attempted to voluntarily comply with the tax law when they learned that they had made errors on their returns.  We are unconvinced by petitioners' explanations.  Petitioners kept systematic (if incomplete) records of their finances and personally compiled the summary sheets which they provided to their return preparer.  Mr. Patel's experienced manager believed him to be highly competent with regard to business matters, and Mr. Patel visited the local IRS office in Dickinson on several occasions to receive answers to tax questions.  Petitioners' assertion of ignorance is not credible.

(8) Petitioners filed a false tax return for 1997.  Mr. Patel pleaded guilty under section 7206(1) to willfully filing a false tax return for 1997.  As a result, Mr. Patel is estopped from arguing that he did not willfully file a false return for 1997.  See Wright v. Commissioner, supra at 639.  Although the estoppel is not extended to petitioners' fraudulent intent to evade tax, the factor militates toward a finding of fraud.

As a result of the number of badges of fraud in this case, we find that respondent has shown by clear and convincing evidence that petitioners filed their 1995, 1996, and 1997 returns with the intent to evade tax. Therefore, the 3-year period of limitations under section 6501(a) does not apply to petitioners' 1995, 1996, and 1997 years, and respondent is not barred from assessing any deficiencies in petitioners' tax for those years.

## III. Unreported Income

If a taxpayer has not maintained business records or its business records are inadequate, the Commissioner is authorized to reconstruct the taxpayer's income by any method that, in the Commissioner's opinion, clearly reflects that taxpayer's income. Sec. 446(b); Parks v. Commissioner, 94 T.C. at 658; A.J. Concrete Pumping, Inc. v. Commissioner, T.C. Memo. 2001-42. The Commissioner's reconstruction need not be exact, but it must be reasonable in the light of all the surrounding facts and circumstances. A.J. Concrete Pumping, Inc. v. Commissioner, supra. Petitioners bear the burden of proving that respondent's determinations are erroneous. See Rule 142(a).

### A. 1995 Gross Receipts

Respondent determined that petitioners failed to report 1995 gross receipts from S8 Dickinson and S8 Glendive of $6,126 and $65,288, respectively. Respondent made his determination by

totaling the income recorded on petitioners' 1995 Daily Reports and, in the case of S8 Glendive, combining the income recorded on the Daily Reports with vending income. Petitioners argue that respondent erred in using the Daily Reports to determine gross receipts because the Daily Reports do not take into account credit card processing fees that may be deducted by credit card companies before making payment to petitioners. Petitioners also argue that respondent miscalculated the S8 Glendive gross receipts because income from vending machines was already reflected on the 1995 S8 Glendive Daily Reports. For the reasons discussed below, we disagree with petitioners.

The amount of a credit card processing fee is not relevant to a determination of petitioners' Schedule C gross receipts. Gross income includes all income from whatever source derived. Sec. 61. It is not necessary that the income be deposited or received so long as the taxpayer has an unfettered right to receive it. See Corliss v. Bowers, 281 U.S. 376 (1930). Petitioners had an unfettered right to income at the time one of their motel rooms was rented. Although deductible credit card processing fees would reduce the amount of petitioners' net Schedule C profit or loss, they would not affect their gross receipts.

Petitioners' proposition that income from vending machines is already reflected on the 1995 S8 Glendive Daily Reports is not

supported by the record. Petitioners' night auditor who prepared the Daily Reports testified that income from vending machines in the motel was not recorded in the 1995 Daily Reports, and we find the auditor's testimony credible. Additionally, petitioners did not produce a single 1995 S8 Glendive Daily Report on which income from vending machines was reported. Thus, petitioners have failed to show that respondent's calculation of 1995 gross receipts is erroneous or unreasonable under the circumstances.

B. <u>1996 Gross Receipts</u>

Respondent has the burden of proof with regard to the tax increase resulting from his amended answer. See Rule 142(a). We find that respondent's burden has been met through trial testimony and petitioners' stipulations. The burden now shifts to petitioners to show that respondent's determination is erroneous. <u>Jones v. Commissioner</u>, 29 T.C. 601, 614 (1957).

Respondent determined that petitioners failed to report 1996 S8 Glendive gross receipts of $173,292. Respondent made his determination by using a bank deposits analysis supplemented by an analysis of specific items not deposited. Petitioners argue that respondent double counted Western Geco payments when calculating unreported gross receipts from S8 Glendive in 1996 because undeposited payments from Western Geco were already included in the 1996 S8 Glendive Daily Reports. Petitioners also argue that respondent erroneously included undeposited Western

Geco payments in gross receipts from S8 Glendive in 1996, because all Western Geco income was deposited into the S8 Glendive Account and reported on petitioners' 1996 return. Petitioners' position is not supported by the record.

Petitioners stipulated that they received $160,350 from Western Geco in 1996. Respondent determined that petitioners deposited only $72,913 of Western Geco payments into their 1996 S8 Glendive Account. The record indicates that this determination is reasonable. None of the evidence presented at trial shows that: (1) Any of the deposits determined by respondent to be taxable were duplications or somehow tax exempt, (2) the undeposited Western Geco income identified by respondent had in fact never been received by petitioners, (3) the unreported Western Geco income identified by respondent had in fact been reported or deposited, or (4) the undeposited Western Geco income identified by respondent was somehow tax exempt. As a result, petitioners have failed to show that respondent's findings are erroneous, and we sustain respondent's determination.

C. 1997 Schedule E Income

Respondent determined that petitioners failed to report 1997 Budget Inn Schedule E income of $55,408. Respondent made his determination by conducting a bank deposits analysis and

disallowing $25,915 of business expenses that petitioners conceded were unsubstantiated.

Nothing in the record indicates that respondent's method of calculating the unreported Schedule E income from Budget Inn was erroneous or unreasonable. The bank deposits method is an acceptable method of income reconstruction. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d. Cir. 1992). Petitioners have failed to show that respondent's method is unreasonable, and thus respondent's determination is sustained.

IV. Expenses

Respondent determined that petitioners overstated their S8 Dickinson Schedule C business expenses on their 1995, 1996, and 1997 returns by $16,775, $75,689, and $42,153, respectively, and their S8 Glendive expenses by $59,582, $73,556, and $95,727, respectively. Petitioners maintain that they overstated their S8 Dickinson Schedule C business expenses on their 1995, 1996, and 1997 returns by $15,198, $61,502, and $37,968, respectively, and their S8 Glendive business expenses by $53,878, $57,190, and $85,939, respectively. We sustain respondent's determination.

Deductions are a matter of legislative grace, and the taxpayer must prove he is entitled to the deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 162(a) allows a taxpayer to deduct all ordinary

and necessary expenses paid or incurred in carrying on a trade or business.  However, petitioners have failed to produce any evidence showing that they are entitled to a deduction for Schedule C business expenses greater than the amounts allowed by respondent.

If a factual basis exists to do so, the Court may in another context approximate an allowable expense, bearing heavily against the taxpayer who failed to maintain adequate records.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  However, in order for the Court to estimate the amount of an expense, the Court must have some basis upon which an estimate may be made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Without such a basis, any allowance would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957).

The record provides no satisfactory basis for estimating petitioners' business expenses.  Although petitioners' accountant recalculated petitioners' tax liabilities, petitioners did not produce at trial all of the source documents necessary to ascertain the accuracy of their determinations at trial. Additionally, petitioners' accountant testified that he did not require petitioners to substantiate the payment and purpose of

each claimed expense.  Accordingly, respondent's determination regarding petitioners' business expenses shall be sustained.

V.    Self-Employed Health Insurance Deductions

Petitioners failed to offer any evidence that they are entitled to a deduction for self-employed health insurance greater than the amounts already allowed by respondent. Accordingly, respondent's determination is sustained.

VI.   Fraud Penalty Under Section 6663

If the Commissioner shows that any portion of an underpayment is due to fraud, the entire underpayment will be treated as attributable to fraud for purposes of the penalty under section 6663(a), except any portion of the underpayment that the taxpayer establishes by a preponderance of the evidence is not attributable to fraud.  See sec. 6663(b); Knauss v. Commissioner, T.C. Memo 2005-6.  As stated above, respondent has shown that petitioners committed fraud in filing their 1995, 1996 and 1997 returns.  Petitioners have not shown that any portion of the deficiencies should not be subject to fraud penalties. Therefore, with the exception of the overstatements of S8 Motel expenses that respondent determined relate to negligence, the deficiencies for the years at issue are subject to fraud penalties.

VII. Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that petitioners are liable for accuracy-related penalties under section 6662(a) for underpayments related to the overstatement of S8 Motel expenses by $16,710, $18,102, and $21,772 for the years at issue, respectively. The penalty applies to any underpayment of tax required to be shown on a return that is attributable to negligence or disregard of rules or regulations under section 6662(b)(1).

Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c). However, section 6664(c)(1) provides that a penalty under section 6662 will not be imposed on any portion of an underpayment if the taxpayer shows reasonable cause for such portion of the underpayment and that the taxpayer acted in good faith with respect to such portion. Reliance on the advice of a professional, such as a certified public accountant, may constitute a showing of reasonable cause if, under all the facts and circumstances, such reliance is reasonable and the taxpayer acted in good faith. Henry v. Commissioner, 170 F.3d 1217, 1219-1223 (9th Cir. 1999), revg. T.C. Memo. 1997-29; Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-264; sec. 1.6664-4(b)(1), (c), Income Tax Regs. To prove reasonable cause based on the receipt

of professional advice, a taxpayer must show that he reasonably relied in good faith upon a qualified adviser after full disclosure of all necessary and relevant facts. <u>Collins v. Commissioner</u>, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. <u>Dister v. Commissioner</u>, T.C. Memo. 1987-217; sec. 1.6664-4(b)(1), Income Tax Regs. The burden of proof rests with petitioners. See Rule 142(a).[2]

Applying these principles to the case before us, we conclude that petitioners have failed to prove that respondent's determination is incorrect. Petitioners are unable to substantiate the Schedule C expenses underlying the accuracy-related penalty. Despite relying on Mr. Robinson to file their returns, petitioners are also unable to show reasonable cause for their errors based on the receipt of advice from a tax professional. Although petitioners relied on their accountant, Mr. Robinson, to prepare their returns, petitioners have conceded that they provided Mr. Robinson with incomplete and false information regarding their expenses.

Petitioners, having failed to show reasonable cause, substantial authority, or any other basis for reducing the

---

[2]As this case deals with examinations commencing before July 22, 1998, sec. 7491(c) does not apply to place the burden of production on respondent. However, even if sec. 7491(c) did apply, respondent has clearly met his burden by demonstrating that petitioners overstated their Schedule C expenses for each of the years at issue.

underpayments, are liable for the section 6662 penalties for the years at issue as determined by respondent.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.