T.C. Memo. 2012-79

UNITED STATES TAX COURT

DWIGHT D. VANOVER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27591-07.                    Filed March 21, 2012.

<u>William B. Lowrance</u> and <u>D. Alden Newland</u>, for petitioner.

<u>Aaron D. Gregory</u> and <u>Matthew S. Reddington</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In a notice of deficiency issued to petitioner on September

14, 2007, respondent determined civil fraud penalties under section

6663[1] of $58,952 and $188,138 for 2000 and 2001, respectively.  The sole issue for decision is whether petitioner is liable for the civil fraud penalties.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts is incorporated herein by this reference.  Petitioner resided in Virginia when he filed his petition.

I.    Background

Petitioner is a businessman who owned and operated a flooring business during the years at issue.  Petitioner left high school at age 15 and enlisted in the U.S. Army.  After his military service, petitioner was employed in various occupations until 1984, when he began installing hardwood floors.  In the ensuing years, petitioner opened two flooring businesses; both eventually filed for bankruptcy.  At some point, petitioner also owned and operated a pizza and deli restaurant and a security business.

In 1996 petitioner, with the assistance of Robert Colling, incorporated a flooring business, Vanover Hardwood Floor Works, Inc. (Vanover).  Although the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

business was incorporated, petitioner operated Vanover as if it were a sole proprietorship out of an office and warehouse in Woodbridge, Virginia.

During the years at issue, petitioner used Vanover's business bank account to pay various personal expenses, including his home mortgage and utilities, and to purchase a classic automobile collection he called "The Vanover Collection" and, in 2001, a $159,000 Silverton yacht. In 2000 petitioner purchased two vehicles from Ramey Ford, Inc. (Ramey Ford): a 1940s Willys Coupe for $60,000 in cash and a 1967 Chevrolet Corvette for $32,500 in cash. In 2001 petitioner purchased three vehicles from Ramey Ford. He also purchased eight additional vehicles from various sellers, for a total purchase price of $277,000. Petitioner titled most of the automobiles in his name, but he also titled some in Vanover's name and some in his business partner's name.

II.     Petitioner's Tax Reporting

During the years at issue petitioner retained physical copies of Vanover's business records. Petitioner kept records for the current year in a file cabinet in the office of Vanover's secretary. At the end of the year, petitioner would empty the file cabinet, put the items in each file into a brown envelope, and store the

envelopes in a green plastic tub. Petitioner also kept a dome book[2] for Vanover. Petitioner's assistant, Melissa Scott, recorded the relevant information in the dome book.

Although Vanover was incorporated, petitioner did not treat Vanover as an incorporated entity and instead reported Vanover's income and expenses for each year on a Schedule C, Profit or Loss From Business, attached to his personal income tax return.[3] Petitioner hired Mr. Colling to prepare his personal income tax returns for 2000 and 2001. Mr. Colling has worked as a tax return preparer since 1994, and he operates his own business, R Tax Service. Mr. Colling advised petitioner to synthesize all of Vanover's records and prepare a computer disk with all of the information. In lieu of giving Mr. Colling a computer disk, petitioner provided Mr. Colling with a summary statement of Vanover's income and expenses. Mr. Colling did not know who had prepared the summary statement of income and expenses, he did not try to verify the information on the statement, and

---

[2]A dome book is a type of accounting book that includes sections for income as well as expenses, such as payroll.

[3]Both parties treated Vanover as a sole proprietorship that reported its income and expenses on a Schedule C, attached to petitioner's personal return. In the light of the parties' apparent agreement, we shall also treat Vanover as if it were a sole proprietorship operated by petitioner.

he did not examine any of petitioner's or Vanover's records when preparing petitioner's returns.

Mr. Colling entered the data from the summary statement of income and expenses into a tax program to generate petitioner's tax returns. At the time, Mr. Colling was unaware that petitioner used Vanover's business bank account to pay his personal expenses. Mr. Colling prepared only petitioner's personal tax returns.

Petitioner filed Forms 1040, U.S. Individual Income Tax Return, for 2000 and 2001, on which he reported his income and expenses and Vanover's income and expenses.[4] For 2000 petitioner reported taxable income of $5,583. On the attached Schedule C, petitioner reported gross receipts of $60,000 and expenses of $40,219 for Vanover.[5] For 2001 petitioner reported taxable income of $5,247. On the attached Schedule C, petitioner reported gross receipts of $78,000 and expenses

_____

[4]Vanover did not file Forms 1120, U.S. Corporation Income Tax Return, for the years at issue. Its income and expenses were reported on the Schedules C attached to petitioner's Forms 1040 for 2000 and 2001.

[5]Petitioner reported the following expenses for 2000: advertising $1,200, car and truck expenses $15,844, commissions and fees $480, insurance $3,100, legal and professional services $1,450, office expenses $1,595, repairs and maintenance $3,150, supplies $4,200, taxes and licenses $250, and meals and entertainment $1,800.

of $62,465 for Vanover.[6]  Although petitioner used funds in Vanover's business bank account to pay personal expenses and to purchase personal assets during both years, petitioner did not report these amounts as income on either of his Forms 1040.

## III.    Petitioner's Criminal Investigation

In April 2002 Special Agent Randall Brooke of the Internal Revenue Service (IRS) began a criminal investigation of petitioner.  Petitioner cooperated with Special Agent Brooke and provided the information requested.  The investigation ultimately led to prosecution of petitioner.  On April 5, 2006, petitioner pleaded guilty to willfully making and subscribing a Form 1040 for taxable year 2001 in violation of section 7206(1).

In connection with petitioner's guilty plea, a "Statement of Facts" was filed with the U.S. District Court for the Eastern District of Virginia.[7]  In the statement of facts, petitioner admitted that in 1999, 2000, and 2001 he received money from Vanover, he spent the money on personal expenses, and he omitted that money from his personal

---

[6]Petitioner reported the following expenses for 2001:  advertising $900, car and truck expenses $6,090, mortgage interest $18,000, office expenses $1,275, supplies $20,000, and utilities $8,000.

[7]As part of his plea agreement, petitioner admitted all of the facts in the statement of facts.

income tax returns for those years. He admitted that he underreported Vanover's gross income for 1999, 2000, and 2001 in the cumulative amount of $936,757. The unreported income "derived primarily from his use of the business accounts to purchase or make payments on collector automobiles and motorcycles as well as payments on several boats and other personal expenses."

IV.     Petitioner's Amended Returns

In January 2003 petitioner contacted Jacqueline Way of the accounting firm Brown & Associates. Petitioner initially asked Ms. Way to assist him with bookkeeping and eventually asked Ms. Way to prepare amended tax returns.

As a result of the criminal investigation and on the advice of Ms. Way and petitioner's attorney, on August 4, 2003, petitioner filed amended personal income tax returns for 2000 and 2001. Ms. Way prepared petitioner's amended returns using Vanover's business records stored in the green plastic tubs. On his 2000 Form 1040X, Amended U.S. Individual Income Tax Return, petitioner reported taxable income of $229,538. Petitioner attached a Schedule C-EZ, Net Profit From Business, for Vanover, on which he reported gross receipts of $109,778 and total expenses of zero. Petitioner also attached a Schedule B, Interest and Ordinary Dividends, on which he reported $139,513 as ordinary dividends from Vanover. On his 2001 Form 1040X, petitioner reported taxable income of $681,640. On an attached Schedule C-

EZ for Vanover petitioner reported gross receipts of $78,000 and total expenses of zero. He also attached a Schedule B, on which he reported $603,232 as ordinary dividends from Vanover. The IRS accepted the amended returns as filed. By notice of deficiency dated September 14, 2007, respondent determined that petitioner was liable for the civil fraud penalty under section 6663 for 2000 and 2001 and calculated the amounts of the penalties on the basis of petitioner's amended returns for those years.

OPINION

If any part of an underpayment on a return is due to fraud, section 6663(a) imposes on the taxpayer filing the return a penalty equal to 75% of the part of the underpayment attributable to fraud. To prove that a taxpayer is liable for the section 6663(a) penalty, the Commissioner must prove by clear and convincing evidence that (1) an underpayment of tax exists, and (2) some part of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b); DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). If the Commissioner proves that any portion of an underpayment is attributable to fraud, then the entire underpayment shall be treated as attributable to fraud unless the taxpayer shows by a preponderance of the evidence that a portion was not so attributable. Sec. 6663(b).

I.    Underpayment of Tax

The parties stipulated that petitioner understated his 2000 and 2001 Federal income tax liabilities by $79,443 and $250,851, respectively. Accordingly, respondent has proven by clear and convincing evidence that petitioner underpaid his Federal income taxes for the years at issue.

II.    Fraudulent Intent

A.    Introduction

If fraud is determined for multiple taxable years, the Commissioner's burden "applies separately for each of the years." Temple v. Commissioner, T.C. Memo. 2000-337, aff'd, 62 Fed. Appx. 605 (6th Cir. 2003). The Commissioner satisfies this burden by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes." DiLeo v. Commissioner, 96 T.C. at 874. Fraud "does not include negligence, carelessness, misunderstanding or unintentional understatement of income." United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See DiLeo v. Commissioner, 96 T.C. at 874. Fraud is never presumed and must be established by independent evidence of fraudulent intent. See Baumgardner v. Commissioner, 251 F.2d 311, 322 (9th Cir. 1957), aff'g T.C. Memo.

1956-112. Fraud may be shown by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available. See Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. See Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Any conduct likely to mislead or conceal may constitute an affirmative act of evasion, see Spies v. United States, 317 U.S. 492, 499 (1943), and an intent to mislead may be inferred from a pattern of such conduct, see Webb v. Commissioner, 394 F.2d 366, 379 (5th Cir. 1968), aff'g T.C. Memo. 1966-81. However, fraud is not proven when a court is left with only a suspicion of fraud, and even a strong suspicion is not sufficient to establish a taxpayer's liability for the fraud penalty. See Olinger v. Commissioner, 234 F.2d 823 (5th Cir. 1956), aff'g in part, rev'g in part on another ground T.C. Memo. 1955-9; Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Green v. Commissioner, 66 T.C. 538, 550 (1976).

      B.     Badges of Fraud

Because it is difficult to prove fraudulent intent by direct evidence, the Commissioner may establish fraud by circumstantial evidence, which includes various

"badges of fraud" (hereinafter, factors) on which the courts often rely.  See Bradford

v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601;

DiLeo v. Commissioner, 96 T.C. at 875.  These factors focus on whether the taxpayer

engaged in certain conduct that is indicative of fraudulent intent such as:  (1)

understating income; (2) failing to maintain adequate records; (3) offering implausible

or inconsistent explanations; (4) concealing income or assets; (5) failing to cooperate

with tax authorities; (6) engaging in illegal activities; (7) providing incomplete or

misleading information to the taxpayer's return preparer; (8) offering false or

incredible testimony; (9) filing false documents, including filing false income tax

returns; (10) failing to file tax returns; and (11) engaging in extensive dealings in cash.[8]

See Bradford v. Commissioner, 796 F.2d at 307-308; Parks v. Commissioner, 94 T.C.

654, 664-665 (1990); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Lipsitz v.

Commissioner, 21 T.C. 917 (1954), aff'd, 220 F.2d 871 (4th Cir. 1955); see also

Morse v. Commissioner, T.C. Memo. 2003-332, aff'd, 419 F.3d 829 (8th Cir. 2005).

The existence of any one factor is not dispositive, but the existence of several factors

is persuasive circumstantial evidence of fraud.  See Niedringhaus v. Commissioner,

---

[8]These factors are nonexclusive.  See Niedringhaus v. Commissioner, 99 T.C.
202, 211 (1992).

99 T.C. 202, 211 (1992); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989).

Respondent contends that the following factors are present in this case: (1) petitioner underreported his income for both years; (2) petitioner filed false documents for both years; (3) petitioner provided incomplete or misleading information to his tax return preparer for both years; (4) petitioner concealed income and assets for both years; (5) petitioner engaged in substantial cash transactions in both years; and (6) petitioner offered implausible or inconsistent explanations of his underreporting of income and his underpayment of tax for both years.

### 1. Understating Income

A pattern of substantially underreporting income for several years is strong evidence of fraud, particularly if the understatement is not satisfactorily explained or due to innocent mistake. See Holland v. United States, 348 U.S. 121, 137-139 (1954); Spies v. United States, 317 U.S. at 499; Webb v. Commissioner, 394 F.2d at 379; Kurnick v. Commissioner, 232 F.2d 678, 681 (6th Cir. 1956), aff'g T.C. Memo. 1955-31; Morse v. Commissioner, T.C. Memo. 2003-332; see also Green v. Commissioner, T.C. Memo. 2010-109 (finding that a satisfactory explanation may weigh against a finding of fraud).

On his original 2000 and 2001 Federal income tax returns, petitioner reported taxable income of $5,583 and $5,247, respectively. The parties stipulated that petitioner underreported his taxable income by $223,955 and $676,393 for 2000 and 2001, respectively. Petitioner failed to report over 90% of his total taxable income for each of 2000 and 2001.

Although petitioner stipulated that he underreported his income on his 2000 and 2001 Federal income tax returns, he argues that the understatements do not constitute evidence of fraudulent intent because he lacked the expertise to properly calculate his income and prepare his returns. He states that he sought the assistance of a return preparer and argues that this fact supports a finding that petitioner lacked fraudulent intent.

A taxpayer who relies on a return preparer may not withhold information from the return preparer and then "escape responsibility for the false tax returns which result." United States v. Garavaglia, 566 F.2d 1056, 1060 (6th Cir. 1977). In addition, a taxpayer may not rely on his own accounting inexperience if the record shows that the taxpayer had sufficient business experience and should have known that his income was underreported. See Korecky v. Commissioner, 781 F.2d 1566, 1569 (11th Cir. 1986), aff'g T.C. Memo. 1985-63. In Korecky the taxpayer argued that he was inexperienced in financial matters and that, therefore, he justifiably relied on his

return preparer. In upholding this Court's finding of fraud, the U.S. Court of Appeals

for the Ninth Circuit stated:

> It may be true that * * * [the taxpayer] had limited formal training in accounting and finance and, as such, might not be expected to know all of the tax and financial aspects of his business. However, he did have the practical experience gained from operating his own business for over a decade. As such, he cannot be excused from keeping accurate records of sales receipts, which is a rather straightforward bookkeeping task. Moreover, a reasonable person would have known that the low sales receipts reported contradicted the thriving nature of his business and his strong cash flow. Nor may * * * [the taxpayer] use reliance on his bookkeeper to excuse his conduct. Reliance on a bookkeeper or accountant is no defense to fraud if the taxpayer failed to provide the accountant "with all of the data necessary for maintaining complete and accurate records." Since * * * [the taxpayer] failed to furnish complete data on his sales receipts, he cannot claim that his bookkeeper was at fault. [Id.; citations omitted.]

Mr. Colling testified that he relied on Vanover's summary statements of income

and expenses and that petitioner did not provide or offer to provide any supporting

documents. Mr. Colling testified that he was unaware that petitioner used Vanover's

business bank account to pay petitioner's personal expenses, such as the automobile

and yacht purchases.[9]

---

[9]Petitioner testified that he told his return preparer, Mr. Colling, that he used Vanover's business bank account to pay personal expenses and purchase luxury items. In the absence of corroborating evidence, we are not required to accept petitioner's self-serving testimony. See Shea v. Commissioner, 112 T.C. 183, 189 (1999).

Petitioner provided inaccurate and incomplete information on the summary statements of income and expenses that he gave to Mr. Colling.[10]  See United States v. Garavaglia, 566 F.2d at 1059-1060.  Petitioner cannot use his reliance on Mr. Colling to excuse his underreporting because petitioner failed to provide Mr. Colling with accurate and complete information regarding Vanover's income and expenses and petitioner's payment of personal expenses from Vanover's business income.  See, e.g., Fuller v. Commissioner, T.C. Memo. 2007-62.

The record establishes that petitioner knew his income was greater than that reported on his returns.  In 2000 petitioner applied for a line of credit from Ramey Ford and submitted an application on which he stated that he earned a salary of $30,000 per month.[11]  Also in 2000, petitioner filed an initial petition for bankruptcy under chapter 13 of the Bankruptcy Code and, on the attached schedules, reported that

---

[10]Petitioner testified that either he or his assistant, Ms. Scott, provided Mr. Colling with the summary statements of income and expenses.  Petitioner was not clear as to who in the Vanover office prepared these statements.

[11]Jack Long, who worked at Ramey Ford, testified that he wrote the $30,000 figure on the credit application.  However, Mr. Long further testified that he took the information over the phone from petitioner and that he believed the $30,000 figure was correct.  Petitioner testified that he did not give the information to Mr. Long.

he earned a monthly salary of $6,700.[12]  In 2001 petitioner faxed to Jack Long of Ramey Ford financial information that indicated that petitioner personally earned monthly gross income of $12,000 and that Vanover had average annual profits of $300,000 to $500,000.[13]

We find that petitioner underreported his income for 1999, 2000, and 2001. Given the substantial amounts of the understatements, petitioner's pattern of underreporting his income, and petitioner's lack of a satisfactory explanation for the understatements, petitioner's understatements are persuasive evidence of fraudulent intent.  See, e.g., Morse v. Commissioner, 419 F.3d at 832.

### 2. Filing False Documents

Fraudulent intent may be inferred when a taxpayer files a tax return intending to conceal, mislead, or prevent the collection of tax.  See Spies v. United States, 317 U.S. at 499.  Under section 7206(1), it is a crime for a taxpayer to file a return "which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material

---

[12]Ronald Cox represented petitioner in the bankruptcy matter and testified that petitioner supplied the $6,700 figure.

[13]At trial petitioner could not explain who calculated this figure or how it was calculated.  Petitioner testified that the handwriting looked like that of Ms. Scott. Petitioner's signature appears on the document.

matter". As we have stated: "[i]n a criminal action under section 7206(1), the issue actually litigated and necessarily determined is whether the taxpayer voluntarily and intentionally violated his or her known legal duty not to make a false statement as to any material matter on a return." Wright v. Commissioner, 84 T.C. 636, 643 (1985).

Although a guilty plea in a criminal prosecution brought under section 7206(1) does not collaterally estop the taxpayer from asserting a defense to the civil fraud penalty for the same year, see id. at 641, the guilty plea collaterally estops the taxpayer from denying that he willfully filed a false return that year, see Curry v. Commissioner, T.C. Memo. 1991-102. A conviction under section 7206(1) "is highly persuasive evidence that the taxpayer intended to evade tax." Morse v. Commissioner, T.C. Memo. 2003-332; see also Stefansson v. Commissioner, T.C. Memo. 1994-162; Avery v. Commissioner, T.C. Memo. 1993-344; Miller v. Commissioner, T.C. Memo. 1989-461.

Petitioner pleaded guilty to willfully making and subscribing a Form 1040 for 2001 in violation of section 7206(1). In his plea agreement, petitioner admitted that he filed false individual income tax returns for 1999, 2000, and 2001. Petitioner's admissions are clear and convincing evidence that petitioner filed false Federal income tax returns for 1999, 2000, and 2001.

3. <u>Providing Incomplete or Misleading Information to One's Return Preparer</u>

Evidence that a taxpayer provided incomplete or misleading information to his return preparer is circumstantial evidence of fraud. <u>See</u> <u>Morse v. Commissioner</u>, 419 F.3d at 823-833. A taxpayer acts fraudulently when he conceals income from his return preparer. <u>See</u> <u>Korecky v. Commissioner</u>, 781 F.2d at 1569; <u>Patel v. Commissioner</u>, T.C. Memo. 2008-223; <u>Morse v. Commissioner</u>, T.C. Memo. 2003-332.

Petitioner provided Mr. Colling with summary statements of Vanover's income and expenses. When questioned, petitioner was evasive as to who actually prepared the summary statements of income and expenses and at one point testified that either he or Ms. Scott prepared the summary statements for Mr. Colling. Although petitioner testified that the summary statements of income and expenses were prepared using the information in the dome book, petitioner did not introduce the dome book or the summary statements into evidence to corroborate his testimony.

Mr. Colling credibly testified that he prepared petitioner's returns using the information petitioner provided on the summary statements of income and expenses. Mr. Colling further testified that petitioner did not inform him that petitioner used

Vanover's business bank account to pay personal expenses and to purchase luxury items. We find that petitioner provided Mr. Colling with incomplete and inaccurate information.

### 4. Concealing Assets or Income

An intent to evade tax may be inferred by "concealment of assets or covering up sources of income". Spies v. United States, 317 U.S. at 499. A taxpayer's use of a business to conceal the personal nature of expenses is also evidence of fraud. See Benes v. Commissioner, 42 T.C. 358, 383 (1964), aff'd, 355 F.2d 929 (6th Cir. 1966); Evans v. Commissioner, T.C. Memo. 2010-199; Romer v. Commissioner, T.C. Memo. 2001-168. But see Knutsen-Rowell, Inc. v. Commissioner, T.C. Memo. 2011-65 (finding that the use of corporate funds to pay personal expenses was "the result of seeking convenience and lack of attention to detail rather than a conscious and clever scheme to avoid Federal income taxes"). The mere existence of a paper trail documenting a taxpayer's income or expenses does not negate a finding of fraudulent intent. See Evans v. Commissioner, T.C. Memo. 2010-199.

In connection with his section 7206(1) plea agreement, petitioner admitted that his unreported income "was derived primarily from his use of the business accounts to purchase or make payments on collector automobiles and motorcycles as well as

payments on several boats and other personal expenses." Petitioner testified that he paid personal expenses, such as his mortgage and utility bills, using funds from Vanover's business bank account. In June 2001 petitioner purchased a yacht for $159,000 and used Vanover's business bank account to pay for it.

By paying personal expenses with checks drawn on Vanover's business bank account, petitioner disguised his personal expenses as business expenses. See, e.g., Romer v. Commissioner, T.C. Memo. 2001-168. Although petitioner argues that the collector automobiles and the yacht were business assets, the record does not support such a finding.[14] In particular, petitioner titled most of the automobiles in his name, not in Vanover's name.

We find that petitioner concealed income by using Vanover's business bank account to purchase collector automobiles and a yacht and to pay personal expenses.

---

[14]Petitioner testified that he started the automobile collection as another line of business and that he planned to purchase classic automobiles, repair them, and sell them for profit. Petitioner's activity with respect to the Vanover Collection was limited to renting a storage facility, buying cars, and hanging signs. On petitioner's application to lease the warehouse space, his real estate agent wrote the following: "Our unit is not leased to do flooring business. It is to be used only as a storage for his personal car collection." Petitioner's financial statement that was attached to the lease application also includes language to that effect.

### 5. Extensive Dealings in Cash

Extensive dealings in cash to avoid scrutiny of a taxpayer's finances is a badge of fraud. See Bradford v. Commissioner, 796 F.2d at 307-308. Fraudulent intent may be inferred when a taxpayer handles his affairs in a manner designed "to avoid making the records usual in transactions of the kind". Spies v. United States, 317 U.S. at 499. In particular, when a taxpayer's dealings in cash are accompanied by attempts to conceal transactions or avoid cash transaction reporting requirements, that course of conduct is probative evidence of fraud. See Valbrun v. Commissioner, T.C. Memo. 2004-242.

Petitioner stipulated that in 2000, he purchased two automobiles in cash--a 1940s Willys Coupe for $60,000 and a 1967 Chevrolet Corvette for $32,500. Respondent introduced copies of checks drawn on Vanover's business bank account and made payable to cash, including seven checks for $9,000 each and one for $2,000. Petitioner testified that he withdrew amounts of less than $10,000 because "if I take anything over $10,000, $10,000 or more, I would subject myself to the possibility of an audit".

Petitioner's testimony supports a finding that he intended to avoid reporting requirements that would be triggered if he withdrew larger amounts of cash. Petitioner's two car purchases in cash, in 2000, totaled $92,500, almost half of his

total income for 2000.  We find that petitioner engaged in cash transactions to avoid reporting requirements and to minimize the possibility of an audit.

### 6. Implausible or Inconsistent Explanations

A taxpayer's implausible or inconsistent explanations for his actions may constitute circumstantial evidence of fraudulent intent.  See Bradford v. Commissioner, 796 F.2d at 307-308; Bahoric v. Commissioner, 363 F.2d 151, 153 (9th Cir. 1966); Gagliardi v. United States, 81 Fed. Cl. 772, 784 (2008).  Petitioner gave inconsistent and implausible explanations for his conduct throughout the trial and on brief. Although petitioner argues on brief that he neither underreported income nor filed false returns, petitioner stipulated that he understated income on his tax returns for 2000 and 2001, petitioner pleaded guilty to the charge of willfully submitting a false income tax return for taxable year 2001, and, in connection with his guilty plea, petitioner admitted that he underreported income and filed false tax returns for 1999, 2000, and 2001.

Petitioner also argues that he did not report all of his income because he operated his previous hardwood flooring business as a sole proprietorship and he did not realize the significance of incorporating his business or that there was a difference between himself and the business.  Petitioner also argues that he did not report all of his income because he was overwhelmed by the volume of Vanover's records and did

not have the accounting expertise to understand those records. We do not accept this testimony as credible.

Finally, petitioner argues that he lacked the intent to evade tax and therefore we cannot find him liable for the civil fraud penalties. Petitioner points to the fact that, with the assistance of Ms. Way, he was able to file amended returns that the IRS accepted without adjustment.[15] However, we find that it is more reasonable to infer from petitioner's course of conduct that his true intention was to conceal substantially all of his income and to take his chances that the fraud would not be discovered. Our finding is supported by the fact that petitioner did not amend his returns until after respondent began a criminal investigation of those returns.

Petitioner relies on Gagliardi, 81 Fed. Cl. 772, to support his argument that he lacked fraudulent intent. Petitioner urges us to find that he lacked fraudulent intent because, like the taxpayers in Gagliardi, he acted negligently, and not with a

---

[15]The fraud was committed when petitioner filed his original returns. See United States v. Habig, 390 U.S. 222 (1968); Plunkett v. Commissioner, 465 F.2d 299, 302-303 (7th Cir. 1972), aff'g T.C. Memo. 1970-274; Hill v. Commissioner, T.C. Memo. 1997-425; see also George M. Still, Inc. v. Commissioner, 19 T.C. 1072, 1077 (1953) ("Any other result would make sport of the so-called fraud penalty. A taxpayer who had filed a fraudulent return would merely take his chances that the fraud would not be investigated or discovered, and then, if an investigation were made, would simply pay the tax which he owed anyhow and thereby nullify the fraud penalty."), aff'd, 218 F.2d 639 (2d Cir. 1955).

specific purpose to evade tax. However, petitioner has not advanced a plausible argument of the type accepted in Gagliardi.[16]

III.    Conclusion

Respondent has proven by clear and convincing evidence that petitioner underpaid his tax liabilities for 2000 and 2001 and that some part of petitioner's underpayment for each year was due to fraud. Petitioner bears the burden of showing by a preponderance of the evidence what portion of each underpayment, if any, is not attributable to fraud. See sec. 6663(b). Petitioner has not argued or introduced any credible evidence to prove that any specific portion of either underpayment was not attributable to fraud. Rather, petitioner argued only that no portion of either underpayment was attributable to fraud because he lacked the intent to evade income tax. The record overwhelmingly establishes to the contrary. Accordingly, we hold that petitioner is liable for the section 6663 civil fraud penalties as determined by respondent.

---

[16]In Gagliardi v. United States, 81 Fed. Cl. 772, 786 (2008), the U.S. Court of Federal Claims ordered a refund of the fraud penalties the taxpayers had paid. The court found plausible the taxpayers' argument that the underreporting of income was due to miscommunication and misunderstanding when the taxpayers transferred bookkeeping responsibilities from their longstanding accountant and return preparer to a newly hired, in-house bookkeeper. The court concluded that the taxpayers lacked the specific intent to evade tax. Id. at 785-786. We cannot reach a similar conclusion on the record before us.

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.