T.C. Memo. 2021-102

UNITED STATES TAX COURT

IRVIN HANNIS CATLETT, JR., DECEASED, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13058-14.                          Filed August 16, 2021.

Irvin Hannis Catlett, Jr., pro se.

<u>William J. Gregg</u> and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  Petitioner was convicted in 2011 on Federal criminal

charges, including tax crimes and conspiracy to defraud the United States.  In

March 2011 he was sentenced to 210 months in prison.  After he was remanded to

custody, the Internal Revenue Service (IRS or respondent) completed a civil

[*2] examination of his 2006-2010 tax years.  In 2014 it sent him a notice of deficiency determining deficiencies, additions to tax, and penalties as follows:

|  |  | Additions to tax |  |  |  | Penalties |  |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6651(f) | Sec. 6654 | Sec. 6662(a) | Sec. 6663(a) |
|---|---|---|---|---|---|---|---|
| 2006 | $212,738 | --- | --- | --- | --- | $12,694 | $111,950 |
| 2007 | 170,835 | --- | --- | --- | --- | 26,803 | 27,612 |
| 2008 | 137,801 | $33,284 | --- | --- | --- | 19,264 | 31,108 |
| 2009 | 83,979 | --- | $19,735 | $60,885 | $2,011 | --- | --- |
| 2010 | 777 | 175 | 136 | --- | --- | --- | --- |

Petitioner timely petitioned this Court in June 2014.  He died in January 2020.  Currently before the Court is respondent's motion to dismiss for lack of prosecution under Rule 123(b).[1]  Finding that respondent has satisfied most applicable burdens of production and proof, we will grant the motion and enter decision against petitioner to the extent set forth below.

FINDINGS OF FACT

I.    Background

Petitioner was the operator of Tax Resolutions, Inc., a Maryland tax preparation firm.  In the early 2000s he devised a tax shelter scheme in which he was

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] assisted by Mark Hunt, an IRS officer. Petitioner incorporated sham entities that we will refer to collectively as Motors Holding. He urged his clients to invest in these entities, describing them as automobile leasing and sales companies. He told his clients that their ownership in Motors Holding would generate substantial losses and eliminate their taxable income. He then prepared for these individuals tax returns reporting the fictitious losses.

Petitioner engaged in this scheme for ten years. During that period he prepared for his clients at least 250 tax returns reporting fictitious losses exceeding $22 million. Petitioner assured his clients that the IRS would not catch wind of the scheme because he had Mr. Hunt working "on the inside."

In March 2010 petitioner was indicted in the U.S. District Court for the District of Maryland for (among other things) conspiracy to defraud the United States in violation of 18 U.S.C. sec. 371, aiding and assisting in the preparation of false tax documents in violation of section 7206(2), and attempting to obstruct and impede the administration of the internal revenue laws in violation of section 7212(a). The indictment charged that petitioner "did willfully aid and assist in * * * the preparation * * * [of income tax returns] that were false and fraudulent * * * in that they reported nonpassive losses that had not been incurred." Petitioner allegedly did this by preparing "backwards" returns, i.e., "by first determin-

[*4] ing each client's tax without including a tax shelter entity loss on the return and then adding to the return a fictitious loss from a tax shelter entity large enough to reduce the client's tax to zero."

In November 2010 a jury convicted petitioner on each count. On March 22, 2011, he was sentenced to 210 months' imprisonment and ordered to pay restitution of $3,810,244, the amount of the Government's estimated tax loss. After he was remanded to custody, the IRS initiated a civil examination of his individual income tax liabilities for 2006-2010.

II.    IRS Examination

The revenue agent (RA) assigned to conduct the examination issued document requests to petitioner, but he declined to comply. The RA then issued summonses to his banks. Petitioner filed three lawsuits in an attempt to quash these summonses, but each attempt was unsuccessful. These actions delayed the IRS' examination by 330 days.

The RA ultimately obtained voluminous bank records. These documents show that petitioner opened bank accounts under the names of Motors Holding (and other sham entities) to hold cash generated by the tax shelter scheme. During 2006-2010 petitioner deposited more than $1.2 million into these accounts and $540,000 into his personal accounts. The checks deposited into these accounts

[*5] indicate that they were issued by clients for "Tax prep," "Taxes," "Tax Service," "IRS Paperwork," "Stock Purchase," "Motor Holding Stock," "Tax Consult," "Investment," "Balance of Stock," and "Acctg and Motor Holdings tax return."

The RA reconstructed petitioner's income using the bank deposits method, concluding that the deposits into the corporate accounts, as well as into petitioner's personal accounts, were beneficially owned by him. The RA determined that petitioner understated income by $407,988 for 2006, by $98,943 for 2007, and by $115,661 for 2008. The RA also determined that petitioner for each year had claimed numerous unsubstantiated deductions.

At trial the RA testified that his bank deposits analysis consisted of three steps: (1) analyzing each deposit, (2) summing the deposits and removing known nontaxable items, and (3) comparing the total remaining deposits with the gross income petitioner had reported. The RA attempted to discuss his findings with petitioner, offering him the opportunity to supply evidence that certain deposits were nontaxable. Petitioner declined the offer.

Petitioner filed no Federal income tax return for 2009 or 2010. The RA accordingly prepared and certified, for those years, a substitute for return (SFR) that met the requirements of section 6020(b). These SFRs show that petitioner

[*6] failed to report $238,507 of income for 2009 and had a small tax liability for 2010, the year he was indicted.

On March 6, 2014, the IRS issued petitioner a notice of deficiency for 2006-2010, determining the deficiencies, additions to tax, and penalties set forth above. See supra p. 2. For 2006-2008 the IRS determined fraud penalties under section 6663(a) (calculated on the portion of the underpayment attributable to unreported income) and accuracy-related penalties under section 6662(a) (calculated on the portion of the underpayment attributable to disallowed deductions). The IRS also determined various additions to tax. These included, for 2009, an addition to tax under section 6651(f) for fraudulent failure to file and (in the alternative) an addition to tax under section 6651(a)(1).

Petitioner timely petitioned for redetermination in June 2014. This case was originally calendared for trial in November 2015 but was continued several times due to his incarceration. In January 2020 he died while in prison.

Respondent filed status reports informing the Court of his efforts to locate members of petitioner's family. On November 19, 2020, respondent represented that petitioner died intestate, that no fiduciary had been appointed for his estate, that no probate or other proceeding had been commenced in State court, that petitioner was survived by his brother and two children, and that none of these

**[\*7]** individuals intended to participate in this case. Respondent indicated that he would move to dismiss the case for lack of prosecution but that a trial would be necessary to enable him to meet his burdens of production and proof.

We set this case for remote trial on June 14, 2021. Petitioner's brother and children were informed of the trial session but did not appear or otherwise communicate with the Court. On June 11, 2021, respondent moved to dismiss for lack of prosecution. We took that motion under advisement and proceeded to trial.

OPINION

I.    Dismissal

The Court may dismiss a case at any time and enter a decision against the taxpayer for failure to prosecute his case properly or failure to comply with the Court's orders and Rules. See Rule 123(b). If a taxpayer dies while his case is pending, we will ordinarily substitute the taxpayer's representative or successor as the proper party. See Rule 63(a). If there is no representative or successor, we may ask the Commissioner to furnish the identities of individuals who possess a "monetary interest[]" in the outcome of the case. See Nordstrom v. Commissioner, 50 T.C. 30, 32 (1968). If no individual expresses an interest, we will dismiss the case for lack of prosecution. Ibid.

**[\*8]**   Respondent moves that we dismiss this case for lack of prosecution because no party has been substituted for petitioner since his death in January 2020.  After an expansive search respondent located three members of petitioner's family.  Respondent's counsel explained to each of them the posture of this litigation, but they indicated that they wanted nothing to do with the case.  When respondent advised them that he intended to file a motion to dismiss, they again confirmed that they would not participate.  We gave all three family members notice of the trial and offered them the opportunity to appear.  They declined to appear, and no other representative appeared on petitioner's behalf.  Under these circumstances we have no choice but to dismiss the case for lack of prosecution.  The decision that we enter will sustain all adjustments insofar as petitioner bears the burden of proof.  See Branson v. Commissioner, T.C. Memo. 2012-124, 103 T.C.M. (CCH) 1680, 1684-1685.

II.     Burdens of Production and Proof

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous.  See Rule 142(a).  In his motion to dismiss respondent accepts that he bears a burden of production with respect to the deficiencies, additions to tax, and accuracy-related penalties.  And respondent accepts that he bears the burdens of production and

[*9] proof with respect to fraud and fraudulent failure to file. Respondent urges that he has discharged his burdens. With one exception, we agree.

A.  Unreported Income

In unreported income cases the Commissioner must generally establish a "minimal evidentiary showing" connecting the taxpayer with the income-producing activity, see Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636, or demonstrate that the taxpayer actually received unreported income, see Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982). Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. See Williams v. Commissioner, 999 F.2d 760, 763 (4th Cir. 1993), aff'g T.C. Memo. 1992-153.

To satisfy his burden of production respondent introduced extensive banking records obtained from third-party institutions. These records establish that petitioner during 2006-2010 deposited more than $1.7 million into various accounts that he controlled. The checks thus deposited were issued by petitioner's clients for services he provided in connection with the tax shelter scheme, including tax return preparation. Petitioner failed to report most of these payments on his tax returns for 2006-2008, and he filed no return for 2009 or 2010.

[*10] The RA reconstructed petitioner's income using the bank deposits method. Spreadsheets detailing the RA's bank deposits analysis are attached to the notice of deficiency, and the RA explained his methodology at trial. He testified that he offered petitioner the opportunity to show that certain deposits were nontaxable, an offer petitioner declined. Respondent has therefore supplied a threshold evidentiary link, Blohm, 994 F.2d at 1549, that connects petitioner with unreported income.

The balance of the deficiencies for 2006-2008 resulted from the RA's disallowance of expense deductions. Petitioner bears the burden of proving his entitlement to these deductions. Rule 142(a); see sec. 1.6001-1(a), Income Tax Regs. At no point during the examination (or subsequently) did petitioner supply any evidence to substantiate his claimed deductions. We will accordingly sustain the deficiencies to the extent they are not barred by the period of limitations.

B.     Period of Limitations

The notice of deficiency was issued on March 6, 2014. Section 6501(a) generally requires the IRS to assess a tax within three years after the return was filed. The period of limitations is extended to six years where the taxpayer omits from gross income an amount "in excess of 25 percent of the amount of gross income stated in the return." Sec. 6501(e)(1)(A)(i). There is no period of limita-

[*11] tions in the case of a false or fraudulent return, sec. 6501(c)(1), or if no return is filed, sec. 6501(c)(3).

For 2009 and 2010 petitioner filed no return, and the tax for those years may thus be assessed "at any time." Sec. 6501(c)(3). For 2007 and 2008 petitioner filed returns on April 15, 2008, and January 5, 2010, respectively. On each return he omitted more than 25% of the gross income stated in the return, so the six-year period of limitations applies. The notice of deficiency was issued on March 6, 2014, within six years of each date, and the notice was thus timely as to those years under section 6501(e)(1)(A)(i).

For 2006 petitioner filed his return on August 21, 2007, again omitting more than 25% of gross income. The six-year period of limitations thus applies, and it would normally expire on August 21, 2013. Under section 7609(e)(1), however, the limitations period was suspended during the 330 days in which petitioner was litigating his motions to quash the IRS summonses to his banks. The six-year period for 2006 was thus extended to July 17, 2014, and the notice of deficiency was therefore timely as to that year also.

In any event, where a taxpayer has filed "a false or fraudulent return with the intent to evade tax," there is no period of limitations and the tax "may be assessed * * * at any time." Sec. 6501(c)(1). "[T]he determination of fraud for

[*12] purposes of the period of limitations on assessment under section 6501(c)(1) is the same as the determination of fraud for purposes of the penalty under section 6663." Neely v. Commissioner, 116 T.C. 79, 85 (2001). As explained below, we find that respondent has met his burden of proving fraud for 2006-2008. Section 6501(c)(1) thus supplies an alternative basis for finding the notice of deficiency timely as to those years.

### C. Penalties

#### 1. Supervisory Approval

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." As a threshold matter, respondent must show that he complied with section 6751(b)(1). See Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017) (ruling that "compliance with § 6751(b) is part of the Commissioner's burden of production"), aff'g in part, rev'g in part T.C. Memo. 2015-42.

In Belair Woods, LLC v. Commissioner, 154 T.C. 1, 14-15 (2020), we explained that the "initial determination" of a penalty assessment is typically embodied in a letter "by which the IRS formally notifie[s] * * * [the taxpayer] that the Examination Division ha[s] completed its work and * * * ha[s] made a definite

**[\*13]** decision to assert penalties." Once the Commissioner introduces evidence sufficient to show written supervisory approval, the burden shifts to the taxpayer to show that the approval was untimely, i.e., "that there was a formal communication of the penalty [to the taxpayer] before the proffered approval" was secured. Frost v. Commissioner, 154 T.C. 23, 35 (2020).

Respondent has produced the Civil Penalty Approval Form by which the RA recommended assertion of fraud and accuracy-related penalties (on distinct portions of the underpayments) for 2006-2008. The RA's immediate supervisor, Chris Orange, signed that form as the "Group Manager." He thereby supplied his "Approval to Assess Penalties Identified Above." On the signature line Mr. Orange inscribed a handwritten date of November 1, 2013.

The definite decision to assert penalties was communicated to petitioner that same day, in an examination report dated November 1, 2013, with an attached Form 4549 showing the penalty calculation. Respondent has thus met his burden of production by showing timely approval. See Frost, 154 T.C. at 35; Belair Woods, 154 T.C. at 15.

2.     Fraud Penalties

"If any part of any underpayment of tax required to be shown on a return is due to fraud," section 6663(a) imposes a penalty of 75% of the portion of the un-

**[\*14]** derpayment attributable to fraud.  Respondent has the burden of proving fraud, and he must prove it by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  To sustain his burden, respondent must establish two elements:  (1) that there was an underpayment of tax for each year at issue and (2) that at least some portion of the underpayment for each year was due to fraud.  Hebrank v. Commissioner, 81 T.C. 640, 642 (1983).

Where the Commissioner determines fraud penalties for multiple tax years, his burden of proving fraud "applies separately for each of the years."  Vanover v. Commissioner, T.C. Memo. 2012-79, 103 T.C.M. (CCH) 1418, 1420 (quoting Temple v. Commissioner, T.C. Memo. 2000-337, aff'd, 62 F. App'x 605 (6th Cir. 2003)).  If respondent proves that some portion of an underpayment for a particular year was attributable to fraud, then "the entire underpayment shall be treated as attributable to fraud" unless the taxpayer shows, by a preponderance of the evidence, that the balance was not so attributable.  Sec. 6663(b).  Respondent has carried his burden of proving that petitioner underreported his income and underpaid his tax for 2006-2008.  The remaining question is whether any portion of these underpayments was due to fraud.

Fraud is intentional wrongdoing designed to evade tax believed to be owing.  Neely, 116 T.C. at 86.  The existence of fraud is a question of fact to be resolved

[*15] upon consideration of the entire record. Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977). Fraud is not to be presumed or based upon mere suspicion. Petzoldt v. Commissioner, 92 T.C. 661, 699-700 (1989). But because direct proof of a taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence. Id. at 699. The Commissioner satisfies his burden of proof by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." Parks v. Commissioner, 94 T.C. 654, 661 (1990). The taxpayer's entire course of conduct may be examined to establish the requisite intent, and an intent to mislead may be inferred from a pattern of conduct. Webb v. Commissioner, 394 F.2d 366, 379 (5th Cir. 1968), aff'g T.C. Memo. 1966-81; Stone v. Commissioner, 56 T.C. 213, 224 (1971).

Circumstances that may indicate fraudulent intent, often called "badges of fraud," include but are not limited to: (1) understating income, (2) keeping inadequate records, (3) giving implausible or inconsistent explanations of behavior, (4) concealing income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) supplying incomplete or misleading information to a tax return preparer, (8) providing testimony that lacks credibility, (9) filing false documents (including false tax returns), (10) failing to file tax returns,

[*16] and (11) dealing in cash.  See Schiff v. United States, 919 F.2d 830, 833 (2d Cir. 1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Parks, 94 T.C. at 664-665; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Morse v. Commissioner, T.C. Memo. 2003-332, 86 T.C.M. (CCH) 673, 675, aff'd, 419 F.3d 829 (8th Cir. 2005).  No single factor is dispositive, but the existence of several factors "is persuasive circumstantial evidence of fraud."  Vanover, 103 T.C.M. (CCH) at 1420-1421.

Several of these factors are neutral or inapposite here.  Because petitioner was himself a professional return preparer, he had no need to supply information to such a person.  And because petitioner declined to participate in the IRS examination, he had no occasion to make implausible statements.  But after thorough review of the record, we conclude that at least six badges of fraud demonstrate that petitioner acted with fraudulent intent.

### a.    Understating Income

A pattern of substantially understating income for multiple years is strong evidence of fraud, particularly if the understatements are not satisfactorily explained.  See Vanover, 103 T.C.M. (CCH) at 1421.  Petitioner understated his income by $407,988 for 2006, by $98,943 for 2007, and by $115,661 for 2008.  These understatements were attributable to his failure to report payments received

[*17] from clients in connection with his tax preparation business and his illegal tax shelter scheme. Respondent has produced bank records showing that petitioner deposited more than $1.7 million into bank accounts that he controlled. Given the source of this income, the substantial amounts underreported, and petitioner's pattern of underreporting, these understatements are persuasive evidence of fraudulent intent.

### b. Keeping Inadequate Records

Petitioner failed to maintain adequate records and supply them to the IRS. The RA repeatedly asked petitioner to provide records of his banking activity and to substantiate the deductions he claimed. Petitioner refused to supply any documents and offered no explanation as to why he did not provide them. He then commenced three separate lawsuits, all meritless, in an effort to prevent the IRS from getting records from his banks. Petitioner's pattern of activity evidences an intent "to conceal information" from the IRS. See Meier v. Commissioner, 91 T.C. 273, 302 (1988).

### c. Concealing Income or Assets

A willful attempt to evade tax may be inferred from a taxpayer's concealment of income or assets. Spies v. United States, 317 U.S. 492, 499 (1943). Petitioner used a tax preparation business to hide an illegal tax shelter scheme. He

[*18] persuaded his clients to "invest" in sham entities. He opened bank accounts for these entities in which he deposited more than $1 million. He did not report this income or disclose his control over the bank accounts. And he took numerous steps to avoid detection: He described the sham entities as automobile leasing and sales companies; he claimed that the entities incurred millions of dollars in bogus losses; and he partnered with an IRS officer to persuade clients that his illegal scheme would escape IRS scrutiny. His entire course of conduct reveals a deliberate intent to conceal income and assets.

### d. Failure To Cooperate With Tax Authorities

Petitioner did not cooperate with the IRS during the examination. He failed to provide any documents to substantiate the deductions claimed on his returns. He refused to supply the RA with his banking records, and he filed three meritless lawsuits in an effort to quash summonses issued to his banks. These actions, which protracted the audit by almost a year, evidence an intent to obstruct the RA's examination.

### e. Engaging in Illegal Activities

Petitioner was indicted and convicted on 12 counts, including conspiracy to defraud the United States in violation of 18 U.S.C. sec. 371 and aiding in the preparation of false tax documents in violation of section 7206(2). He convinced

[*19] clients to invest in sham entities by the promise of tax losses. He then prepared false returns for those clients: As the indictment alleged, he prepared "backwards" returns "by first determining each client's tax without including a tax shelter entity loss on the return and then adding to the return a fictitious loss from a tax shelter entity large enough to reduce the client's tax to zero." As a tax return preparer, he must have known that this was illegal. Indeed, he partnered with an IRS officer, whom he described as his "man on the inside," to induce clients to participate in his scheme. All of this evidences fraud. See Dung Le v. Commissioner, T.C. Memo. 2020-27, 119 T.C.M. (CCH) 1165, 1173.

### f. Filing False Documents

Petitioner was convicted of violating sections 7206(2) and 7212(a) by preparing false and fraudulent income tax returns for his clients. During the examination the RA discovered that petitioner had prepared at least 250 fraudulent returns reporting more than $22 million in bogus losses. He also filed false or misleading articles of incorporation, prospectuses, and stock certificates for the sham entities deployed to carry out his tax shelter scheme.

Petitioner likewise filed false returns on his own behalf for 2006-2008, omitting more than $600,000 of gross income. As a professional return preparer,

**[\*20]** he must have recognized his obligation to report this income. These false documents furnish additional evidence of fraudulent intent.

We conclude that respondent has established by clear and convincing evidence that the underpayments of tax for 2006-2008 were attributable to fraud. Petitioner submitted no evidence showing that any portions of these underpayments were not due to fraud. Respondent can therefore assess the deficiencies and penalties for 2006-2008 "at any time." See sec. 6501(c)(1).

### 3. Accuracy-Related Penalties

The IRS determined accuracy-related penalties for 2006-2008 on the portions of the underpayments attributable to disallowance of petitioner's expense deductions. The Code imposes a 20% penalty upon the portion of any underpayment of tax that is attributable to (among other things) "[n]egligence or disregard of rules or regulations." Sec. 6662(a) and (b)(1). "Negligence" includes "any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. Respondent bears the burden of production with respect to these penalties. See sec. 7491(c). He has satisfied his burden by showing that petitioner at no time supplied any evidence to substantiate the deductions he claimed. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001).

[*21] D.     Additions to Tax

1.     Failure To Timely File

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file the return, not to exceed 25% in toto. Respondent determined additions to tax under this provision for 2008, 2009 (as an alternative), and 2010. The return for each year was due on April 15 of the following year. See sec. 6072(a). Respondent has the burden of production on this issue. See sec. 7491(c).

Respondent produced certified transcripts of petitioner's accounts for all three years. The transcript for 2008 shows that petitioner filed his return on January 5, 2010, well after the April 2009 deadline. The transcripts for 2009 and 2010 show that petitioner failed to file any return at all. This evidence is sufficient to satisfy respondent's burden of production. See Florance v. Commissioner, T.C. Memo. 2009-154, 97 T.C.M. (CCH) 1854, 1856.

2.     Failure To Timely Pay

Section 6651(a)(2) provides for an addition to tax when a taxpayer fails to pay timely the tax shown on a return. To meet his burden of production under section 7491(c) with respect to the section 6651(a)(2) addition to tax, respondent must provide evidence of a tax return. See Wheeler v. Commissioner, 127 T.C.

**[\*22]** 200, 208-210 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008). An SFR that meets the requirements of section 6020(b) is treated as the "return" filed by the taxpayer for this purpose. See sec. 6651(g)(2).

Respondent determined additions to tax under section 6651(a)(2) for 2009 and 2010. He has met his burden of production by producing certified copies of the SFRs that the IRS prepared on petitioner's behalf for these years. Petitioner's account transcripts show that he did not timely pay the tax shown on the SFRs. Respondent has therefore satisfied his burden.

### 3. Failure To Pay Estimated Tax

Section 6654 imposes an addition to tax on an individual who underpays his estimated tax. The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability. Sec. 6654(c) and (d). Each required installment is equal to 25% of the "required annual payment." Sec. 6654(d).

Respondent's burden of production under section 7491(c) requires him to produce, for each year for which the addition is asserted, evidence that the taxpayer had a "required annual payment." See Wheeler, 127 T.C. at 211. The "required annual payment" is generally equal to the lesser of (1) 90% of the tax shown on the taxpayer's return for that year (or, if no return is filed, 90% of his tax

[*23] for such year) or (2) if the individual filed a return for the immediately preceding taxable year, 100% of the tax shown on that return. Sec. 6654(d)(1)(B).

The IRS determined an addition to tax under section 6654 for 2009. Respondent has established the amount of tax shown on petitioner's 2008 return, and we have determined that petitioner had a tax liability of $83,979 for 2009, a year for which he filed no return. Petitioner therefore had a "required annual payment." Respondent has shown that petitioner paid no estimated tax for 2009, and he has thus satisfied his burden of production. See Wheeler, 127 T.C. at 212.

### 4. Fraudulent Failure To File

Section 6651(f) provides that, "[i]f any failure to file any return is fraudulent," the addition to tax imposed by section 6651(a)(1) shall accrue at a rate of 15% per month, not to exceed 75% in the aggregate. Respondent has the burden of proving fraud, and he must prove it by clear and convincing evidence. See sec. 7454(a); Rule 142(b). Where dismissal for lack of prosecution is appropriate, the Commissioner can satisfy his burden by presenting, "either in the pleadings or at trial, * * * sufficient facts to sustain a finding of fraud." Fifer v. Commissioner, T.C. Memo. 1993-44, 65 T.C.M. (CCH) 1865, 1869; see Smith v. Commissioner, 91 T.C. 1049, 1058 (1988) (holding that "the Commissioner's pleadings must

[*24] allege specific facts sufficient to sustain a finding of fraud before he will be entitled to a" default judgment), aff'd, 926 F.2d 1470 (6th Cir. 1991).

The IRS determined an addition to tax under this provision for 2009. Petitioner's return for 2009 was due on April 15, 2010, roughly one month after he was indicted for tax crimes. Under these circumstances, petitioner's failure to file a 2009 return may have been attributable to various causes, e.g., distraction occasioned by the criminal prosecution, advice of counsel, or reluctance to take a position inconsistent with the positions taken on his prior returns. Considering the record as a whole (including the facts contained in respondent's pleadings), we conclude that respondent has not carried his burden of proving that petitioner's failure to file for 2009 was fraudulent. We will therefore not sustain the section 6651(f) addition to tax for 2009.

However, the notice of deficiency stated that, "if the fraudulent failure to file penalty is determined not to apply, the failure to file penalty [sic] under * * * [section] 6651(a)(1) does apply." As explained supra p. 21, respondent has satisfied his burden of production for the section 6651(a)(1) addition to tax. We will accordingly sustain his alternative determination.

**[\*25]** To reflect the foregoing,

An appropriate order will be issued,
and decision will be entered under
Rule 155.