# United States Tax Court

T.C. Memo. 2023-149

JOHN THOMAS MINEMYER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent[1]

—————

Docket No. 22182-10.                    Filed December 13, 2023.

—————

John Thomas Minemyer, pro se.

*Daniel Charles Brauweiler*, *Adrienne E. Griffin*, and *Audrey Marie Morrie*, for respondent.


SUPPLEMENTAL MEMORANDUM
FINDINGS OF FACT AND OPINION

KERRIGAN, *Chief Judge*: This case is before the Court on remand from the U.S. Court of Appeals for the Tenth Circuit for further consideration consistent with its opinion in *Minemyer v. Commissioner* (*Minemyer II*), No. 21-9006, 2023 WL 314832 (10th Cir. Jan. 19, 2023), affirming in part, reversing in part, and remanding our decision in *Minemyer v. Commissioner* (*Minemyer I*), T.C. Memo. 2020-99.

Pursuant to the Court's February 25, 2019, Order, we granted respondent's Motion for Partial Summary Judgment filed November 19, 2014, holding that petitioner is liable for the federal income tax deficiencies determined for 2000 and 2001 and the section 6663 civil

---

[1] This opinion supplements *Minemyer v. Commissioner*, T.C. Memo. 2020-99, *aff'd in part, rev'd in part and remanded*, No. 21-9006, 2023 WL 314832 (10th Cir. Jan. 19, 2023).

[*2] fraud penalty asserted for 2000.[2] In *Minemyer I*, we considered whether petitioner was liable for a civil fraud penalty for 2001. We held that respondent failed to meet the burden of production with respect to the written supervisory approval requirement of section 6751 and that petitioner was therefore not liable for the civil fraud penalty for 2001.

In *Minemyer II*, the Tenth Circuit agreed that the Commissioner correctly determined deficiencies in income tax for 2000 and 2001 and correctly asserted the civil fraud penalty for 2000. With respect to the civil fraud penalty for 2001, the Tenth Circuit held that respondent's burden was met with respect to the written supervisory approval requirement of section 6751. *Minemyer II*, 2023 WL 314832, at *5. Pursuant to *Minemyer II*, the issue for our consideration is whether petitioner is liable for a civil fraud penalty for 2001. *Id.*

## FINDINGS OF FACT

Facts with respect to this case were found in our original opinion, *Minemyer I*, and are incorporated by this reference. We clarify and add to the facts to address the holding in *Minemyer II*. Some facts have been stipulated and some facts have been deemed stipulated pursuant to Rule 91(f).

Petitioner was incarcerated in Colorado when he timely filed his Petition, and he claimed residency in Wyoming.

I. *Petitioner's Business Activities*

In July 1998 petitioner and a business associate, John Breaker, formed Lozon, LLC (Lozon), to provide a molded polymer coupler—a device that connects pipes that hold underground fiber optic cables—to the telecommunications industry. Lozon was organized as a limited liability company (LLC) and taxed as a partnership, with petitioner as a 50% member. Lozon quickly became successful until an economic downturn hit the technology sector. During 2000 and 2001 petitioner earned substantial income through the partnership.

---

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3]  A.  *Financial Structuring*

In 1999 petitioner and Mr. Breaker met Terry Neal, who operated Offshore Corporate Services (OCS) and had published a book, *The Offshore Solution: Privacy, Asset Protection, Tax Shelters, Offshore Investing and Banking*.  On or about June 10, 1999, petitioner and Mr. Breaker engaged OCS to assist with the organization of two nominee corporations and to structure "nominee banking services."  In October 1999 petitioner directed Mr. Neal to form Mountain West Financial, Inc. (Mountain West), a nominee corporation organized in Nevada.  Mr. Neal, through OCS, formed Lozon Solutions, Inc. (Lozon Solutions), a nominee corporation organized in Nevada, under Malaysian Special Situations, Inc., an offshore company, and opened a bank account for Lozon Solutions with Wells Fargo & Co.  OCS then hired Nevis American Trust Co. (Nevis Trust) to set up Lozon International, Inc., Lijon, Ltd, Vista Capital Resources, Ltd. (Vista Capital), and Ziastar, Ltd. as legal entities in Nevis, West Indies, on behalf of petitioner and Sara and John Breaker.

Morgan, Carter, and Young, Inc., a corporation registered in Nevada, acted as the initial registered agents for Lozon Solutions and Mountain West.  Lee Morgan of Morgan, Carter, and Young, Inc., initially served as president and secretary of Lozon Solutions until petitioner became president, secretary, and treasurer in around 2001.  During 2000–01 petitioner sent checks to Mr. Morgan, instructing him to first deposit the funds in the Lozon Solutions account, and then to move the funds abroad to the Malaysian Special Situations account.  Once the funds were abroad, petitioner instructed Mr. Morgan, Gillian Hobson, of Nevis Trust, and Christina Cook of Morgan, Carter, and Young, Inc., to transfer funds between the foreign entities they had set up.  Petitioner made multiple transfers to Lozon Solutions, Malaysian Special Situations, Vista Capital, and Lijon in excess of $100,000.  At the beginning of 2000 petitioner estimated the combined account balances of Lijon and Vista Capital to be in excess of $1 million.

Petitioner instructed Mr. Morgan and Mr. Hobson to use the money to acquire sham insurance policies from Sovereign Life and Casualty, Ltd.  The sham life insurance policies were investment vehicles with no-risk life insurance face values equal to the investments.

Petitioner's transfers between the multiple offshore accounts created a convoluted money trail.  From the Malaysian Special Situations account, petitioner instructed Mr. Morgan and Mr. Hobson to

[*4] move funds to Mountain West's account or his personal bank account. Once the funds were transferred to Mountain West's account, petitioner instructed Mr. Morgan to have some funds rolled over into short-term certificates of deposit and to have some funds deposited in petitioner's personal bank account. In 2000–02 petitioner continued to instruct both Mr. Morgan and Mr. Hobson to transfer funds between the entities, as well as back to the Nevada corporations. By 2003 much of petitioner's diverted partnership income was brought back to the United States through Mountain West.

### B. *Payment of Personal Expenses*

Petitioner used Lozon's corporate bank accounts to pay personal expenses that he and his family incurred in 2001. Petitioner, his wife, Linda Minemyer, and other family members used Lozon's funds to pay for travel to various locations including Hawaii, Australia, and Singapore, among others, in 2000 and 2001. In 2001 petitioner used Lozon's business credit card to pay for personal travel to his mother's home in Springfield, Missouri.

Between July 11, 2000, and October 5, 2002, Lozon spent $69,570 to have petitioner's 1932 Ford Roadster restored. On April 30, 2001, petitioner paid Grizzly Auto Center $32,229 for a 2001 Dodge Durango titled in the name of his son, Nathan Minemyer. He paid for the car with a check written from the Lozon checking account, signed by petitioner, with "Nate's Car" written in the memo line. In May 2001 petitioner and his wife joined the Country Club of Colorado, for which Lozon paid the $22,500 family membership fee. In 2001 Lozon paid $31,980 for petitioner's individual income tax liability for 2000.

## II. *Tax Returns and Reporting*

Mr. Neal connected petitioner and Mr. Breaker with Kevin Andersen, a certified public accountant (CPA), with whom petitioner met in November 1999. Mr. Andersen prepared petitioner's individual federal income tax returns for 1999, 2000, and 2001.

Lozon did not issue petitioner a Schedule K–1, Shareholder's Share of Income, Deductions, Credits, etc., for 2001. Lozon filed Form 8736, Application for Automatic Extension of Time to File U.S. Return for a Partnership, REMIC, or for Certain Trusts, for 2001. Lozon did not file a Federal income tax return for 2001.

**[\*5]**   On his federal income tax return for 2001 petitioner reported $71,959 in total income and a total tax of $10,634.  Petitioner's 2001 income tax return did not report any passthrough tax items from Lozon.  Petitioner's income tax return for 2001 failed to report income diverted abroad through Lozon Solutions and Malaysian Special Situations, as well as funds used to pay personal expenses.

In 2003 petitioner became aware of investigations into Mr. Breaker's tax returns.  He hired Ruth Ahopelto, a CPA with Ahopelto & Associates, to amend his tax returns for 2000 and 2001.  Ms. Ahopelto prepared Forms 1040X, Amended U.S. Individual Income Tax Return, for both 2000 and 2001, but ultimately petitioner neither signed nor filed either return despite his assurances to the Court that he did in fact file the returns.  The return prepared by Ms. Ahopelto for 2001 stated that petitioner's original return had likewise omitted $174,087 in passthrough income from Lozon and that he owed $60,989 in additional income tax.  The $174,087 in omitted passthrough income consisted of $167,065 in profits and $7,022 in interest.

III.   *Criminal Tax Fraud Charges*

On April 8, 2008, the United States filed an indictment against petitioner in the U.S. District Court for the District of Colorado charging him with two counts of income tax evasion under section 7201, the first count for 2000 and the second count for 2001.  The indictment accused petitioner of filing false and fraudulent income tax returns for 2000 and 2001 and substantially understating his income by knowingly omitting passthrough income from Lozon.  On February 4, 2009, petitioner reached a settlement with the United States and pleaded guilty to tax evasion (Plea Agreement).  In exchange for his pleading guilty to the first count of income tax evasion for 2000, the United States dismissed the second count for 2001.

As part of the Plea Agreement petitioner agreed that there was no dispute as to the material elements which establish a factual basis for the offense of income tax evasion.

The Plea Agreement states:

> During the tax years 2000 and 2001, the defendant earned substantial partnership income from Lozon, but the defendant intentionally and willfully did not report that partnership income on his Forms 1040 for those tax years.  Instead the defendant hid this partnership income by using

[*6]  the Lozon partnership bank account to pay for the defendant's personal expenses and by using a series of offshore financial transactions as described below.

With respect to the partnership profits earned in the tax years 2000 and 2001, the defendant diverted a substantial amount of the partnership's gross receipts directly to an account in the name of a nominee Nevada corporation called Lozon Solutions, Inc. ("Lozon Solutions"). Lozon Solutions then sent the defendant's partnership income offshore, through an organization operated by T.N., where the money was used in part to purchase sham life insurance policies. Eventually by the end of 2003, much of the defendant's partnership income from the year 2000 and 2001 was brought back into the United States through another nominee Nevada corporation called Mountain West Financial, Inc.

As part of the Plea Agreement petitioner and the Government also agreed that, for purposes of sentencing and restitution, the conduct involved for both counts of the indictment should be included as relevant conduct. Petitioner and the Government further agreed that the Government's evidence would be that (1) petitioner intentionally and willfully filed false Federal income tax returns for 2000 and 2001; (2) petitioner was a 50% partner in Lozon; (3) petitioner received substantial partnership income from Lozon that he intentionally and willfully did not report on his 2000 and 2001 Federal income tax returns; (4) petitioner hid his share of partnership income by using Lozon's bank account to pay his personal expenses and by using a series of offshore financial transactions; (5) petitioner diverted a substantial amount of Lozon's gross receipts directly to an account in the name of Lozon Solutions; (6) Lozon Solutions sent petitioner's partnership income offshore, where the money was used in part to purchase sham life insurance policies; (7) by the end of 2003 much of petitioner's partnership income was brought back into the United States through Mountain West Financial; (8) in 2000 and 2001 petitioner paid his personal expenses directly out of the Lozon bank account and did not report this money as income on his 2000 and 2001 federal income tax returns; (9) petitioner failed to report his share of partnership income of $355,176 on his 2000 federal income tax return, which resulted in an underreported Federal income tax liability of $140,561; (10) petitioner failed to report his share of partnership income of $174,087 on his 2001 federal income tax return, which resulted in an underreported federal

[*7] income tax liability of $60,357; and (11) the combined tax loss for the years at issue was $200,918.

The district court sentenced petitioner to one year in prison and three years of supervised release, fined petitioner $25,000, and ordered restitution of $200,918, which petitioner paid at the time of his sentencing. Petitioner began serving his prison sentence in December 2009. Petitioner did not file the Form 1040X for 2001 showing income from Lozon.

OPINION

## I. *Section 6663 Civil Fraud Penalties*

Fraud is an intentional wrongdoing on the part of the taxpayer with the specific purpose to evade a tax believed to be owed. *Sadler v. Commissioner*, 113 T.C. 99, 102 (1999). Section 6663 imposes a penalty of 75% of an underpayment of tax which is attributable to fraud. § 6663(a). Once the Commissioner establishes that part of an underpayment is due to fraud, the entire underpayment is treated as attributable to fraud, except to the extent the taxpayer establishes otherwise. § 6663(b).

If the Commissioner alleges fraud, he bears the burden of showing by clear and convincing evidence that the taxpayer fraudulently underpaid his tax. § 7454(a); Rule 142(b). The Commissioner must show that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes. *Katz v. Commissioner*, 90 T.C. 1130, 1143 (1988). The Commissioner must show for each relevant year that (1) the taxpayer underpaid his tax and (2) the underpayment was attributable to fraud. *Parks v. Commissioner*, 94 T.C. 654, 660–61 (1990).

### A. *Underpayment*

An underpayment is the amount by which the tax imposed by title 26 exceeds the amounts shown as the tax by the taxpayer on his return. § 6664(a). Petitioner conceded in the Plea Agreement that he understated his federal income tax liability for 2001. Pursuant to the Court's February 25, 2019, Order, we granted respondent's Motion for Partial Summary Judgment filed November 19, 2014, holding that petitioner is liable for the federal income tax deficiency determined for 2001. Accordingly, respondent has proven by clear and convincing evidence that petitioner underpaid his tax liability for the year at issue.

[*8]   B.   *Fraudulent Intent*

The existence of fraud is a question of fact to be resolved by considering the entire record. *Rowlee v. Commissioner*, 80 T.C. 1111, 1123 (1983). Fraud may be proven by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of intent is rarely available. *Id.*

Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud," including, but not limited to (1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) filing false documents; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal illegal activity. *Niedringhaus v. Commissioner*, 99 T.C. 202, 211 (1992). The existence of any one badge is not dispositive, but multiple badges together are strong circumstantial evidence of fraudulent intent. *Id.* Multiple badges of fraud are evident in this case.

Petitioner pleaded guilty to criminal income tax evasion. The Plea Agreement is specific, clear and convincing evidence of petitioner's fraudulent course of conduct with respect to 2001, and he at no point produced evidence showing that the facts admitted are inaccurate. Although the United States dismissed the count for 2001, petitioner's admissions show a fraudulent course of conduct that spanned 2000 and 2001.

### 1.   *Understatement of Income*

Petitioner significantly underreported his income. A consistent and substantial understatement of income for several years is, by itself, strong evidence of fraud. *Marcus v. Commissioner*, 70 T.C. 562, 577 (1978), *aff'd*, 621 F.2d 439 (5th Cir. 1980) (unpublished table decision). As the Plea Agreement in the criminal case conclusively established, petitioner generated $355,176 and $174,087 in partnership income in 2000 and 2001, respectively, significantly more than the zero reported on his return for each year. Respondent has shown that petitioner substantially underreported his income for 2001.

### 2.   *Concealing Income or Assets*

Fraudulent intent to evade tax may be inferred from the "concealment of assets or covering up sources of income." *Spies v. United*

**[\*9]** *States*, 317 U.S. 492, 499 (1943). A taxpayer's use of a business entity to cloak the personal nature of expenses evinces fraud. *See Romer v. Commissioner*, T.C. Memo. 2001-168, slip op. at 45–46.

Petitioner, as a 50% partner in Lozon, used Lozon funds to pay personal expenses including family travel, the restoration of an antique car, and the purchase of a new car for his son. Petitioner also used Lozon funds to join a local country club and to pay his individual income tax liability. Lozon did not report the amounts on Form W–2, Wage and Tax Statement, on Form 1099–MISC, Miscellaneous Income, or on its partnership return. Likewise, petitioner did not report as income Lozon funds used to pay personal expenses. As part of the Plea Agreement, petitioner agreed that he willfully concealed partnership income by using the Lozon bank account to pay personal expenses. This badge supplies evidence of fraud for 2001.

3.   *Giving Implausible or Inconsistent Explanations of Behavior*

A taxpayer's implausible or inconsistent explanations for his actions may constitute circumstantial evidence of fraudulent intent. *Vanover v. Commissioner*, T.C. Memo. 2012-79, slip op. at 22. Petitioner testified that he understood the funds he was moving abroad and then back to the United States to have already been taxed, and to be the personal funds of Mr. Breaker, his business partner. Petitioner also testified that the multiple transfers of money abroad were conducted to make the money "hard to trace." We find it implausible that petitioner actually believed he was in possession of, and transferring abroad or to his own personal bank account, the "hard to trace" personal funds of his business partner.

We are also unconvinced that petitioner believed the Lozon funds to be posttax money. Petitioner made multiple transfers to Lozon Solutions, Malaysian Special Situations, Vista Capital, and Lijon in excess of $100,000. At the beginning of 2000, petitioner estimated the combined account balances of Lijon and Vista Capital to be in excess of $1 million. Petitioner continued making funds transfer payments in excess of $100,000 through 2001. Meanwhile, petitioner had not reported any taxable income attributable to Lozon for 1999, 2000, or 2001. Petitioner gave no explanations as to when or how the Lozon funds transferred abroad were taxed. Petitioner's implausible explanation provides evidence of fraudulent intent.

**[\*10]**          4.    *Filing False Documents*

Fraudulent intent may be inferred when a taxpayer files a document intending to conceal, mislead, or prevent the collection of tax. *Spies*, 317 U.S. at 499. Filing false documents with the IRS is "an 'affirmative act' of misrepresentation sufficient to justify the fraud penalty." *Zell v. Commissioner*, 763 F.2d 1139, 1146 (10th Cir. 1985), *aff'g* T.C. Memo. 1984-152. Filing false documents includes filing a return that omits income or contains a false response. *See Harrington v. Commissioner*, T.C. Memo. 2021-95, at \*39–40, *aff'd*, No. 22-9000, 2022 WL 17333080 (10th Cir. Nov. 30, 2022). Petitioner filed a false Federal income tax return for 2001 by knowingly and intentionally omitting significant amounts of income from Lozon. This badge provides evidence of fraudulent intent for the year at issue.

          5.    *Engaging in Illegal Activity*

A taxpayer's participation in illegal activity, its concealment, and criminal prosecution for such crimes related to the understatement of tax for the year at issue is strong evidence of fraudulent intent. *Petzoldt v. Commissioner*, 92 T.C. 661, 700 (1989). Petitioner was indicted on two counts of tax evasion pursuant to section 7201 for 2000 and 2001. Petitioner engaged in criminal activity as conclusively determined by his guilty plea to committing tax evasion in violation of section 7201 for 2000. The conviction for 2000 is circumstantial evidence of fraud for the years for which petitioner did not plead guilty. *See Moore v. Commissioner*, T.C. Memo. 2001-77, slip op. at 16. As part of the Plea Agreement for dropping the criminal fraud charge against him for 2001, petitioner agreed that there was no dispute that he engaged in the same behavior for both 2000 and 2001, namely diverting partnership funds abroad, intentionally and willfully not reporting income, and paying personal expenses out of the Lozon bank account.

Petitioner testified that he was motivated to plead guilty to "preserve my patent case and [pleading guilty] was the only method to do it." We do not find convincing the argument that petitioner needed to accept a prison sentence in order to continue with patent litigation. Furthermore, petitioner's motivation for entering into the Plea Agreement is irrelevant and does not undermine the reliability of the admissions he made therein. *See Evans v. Commissioner*, T.C. Memo. 2010-199, slip op. at 14. Petitioner's illegal activity relates to the understatements for both 2000 and 2001, and his conviction for tax evasion is therefore evidence of fraud for 2001.

**[*11]** C.    *Reasonable Cause*

Section 6664(c)(1) provides that "[n]o penalty shall be imposed under [section 6663] with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." Reasonable cause may exist where the taxpayer relies on professional advice if the taxpayer proves by a preponderance of the evidence that (1) the adviser was a competent professional who had sufficient expertise to justify the taxpayer's reliance on him or her; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. *Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002).

Petitioner contends that his retaining Mr. Andersen, a CPA, qualifies him for the reasonable cause defense. This contention lacks merit. Our review of the record shows petitioner personally involved at each step of the fraudulent activity. Petitioner hired agents to create foreign entities and sent handwritten notes ordering the transfer of funds abroad. In the district court petitioner acknowledged willfully diverting and concealing income and ultimately, with respect to 2000, pleaded guilty to tax fraud. In contrast his accountant only prepared his individual tax returns for 2000 and 2001.

We find that petitioner did not rely on Mr. Andersen's "judgment," nor did he act in good faith.[3] Petitioner has failed to prove that he had reasonable cause within the meaning of section 6664(c). Accordingly, we sustain respondent's determination regarding the section 6663(a) fraud penalties.

II.    *Conclusion*

Numerous badges of fraud are present in this case. We conclude that respondent has proven by clear and convincing evidence that

---

[3] Petitioner asserts that his hiring of a new CPA in 2003 to amend his returns for 2000 and 2001 is evidence of his efforts to correct the fraudulent activity of his prior CPA, Mr. Andersen. However, as the time of his attempt to amend his 2000 and 2001 returns falls shortly after petitioner was made aware of investigations into his business partner, we find it more likely that these amendments were made out of an effort to avoid a similar investigation into himself. *See Vanover*, T.C. Memo. 2012-79, slip op. at *9. In either event, as we find here that petitioner's fraud is not attributable to reliance on professional advice, seeking a new CPA would not undercut evidence of fraud committed by petitioner.

**[\*12]** petitioner underpaid his tax liability for the year at issue and that the underpayment was due to fraud. The fraud penalty applies to the entire underpayment as petitioner failed to establish that any portion of the underpayment was not attributable to fraud. The section 6663 fraud penalty for 2001 applies to the extent respondent determined.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate decision will be entered.*